*610 OPINION OF THE COURT
Anne G. Feldman, J.
In August 1981, defendant was convicted by a jury of robbery in the first degree. As a second felony offender, he was sentenced to a minimum term of 8 and a maximum term of 16 years in prison. His conviction was upheld upon appeal (see, People v Ramos, 99 AD2d 686, lv denied 62 NY2d 622 [1984]). Defendant now moves to vacate the judgment of conviction pursuant to CPL 440.10 on the grounds that (1) there is newly discovered evidence and (2) the conviction was obtained in violation of his constitutional rights.
The prosecution’s case consisted of the complainant’s version of the incident and the arresting officer’s testimony that defendant fled when the officer, in plain clothes, tried to apprehend him several days later.
Defendant’s pretrial motion sought disclosure of potential witnesses’ criminal records, and any other evidence which might adversely affect those prosecution witnesses’ credibility. Defendant also requested the substance of any statements by eyewitnesses to law enforcement officials. The People’s response indicated that there was "[n]o Giglio material” and witnesses’ statements were "[n]ot known at this time”.
At the trial, 17-year-old Peter Halstead testified that defendant (then 24) approached him in the elevator of the apartment house as Halstead was en route to his girlfriend’s apartment and, at knifepoint, relieved him of his portable radio. He further testified that he recognized defendant from their neighborhood and that when he later saw him in a local restaurant, he led the police to him. The radio was never recovered. Defendant testified in his own behalf and presented an alibi defense. He was cross-examined upon his criminal record, which consisted of several misdemeanors and a felony conviction.
In his summation, the prosecutor addressed the central issue in the case — the conflicting testimony of the complainant and defendant, and how the differences in their backgrounds affected their credibility.[1] The prosecutor specifically emphasized defendant’s criminal history as affecting his credibility. In contrast, he characterized the complainant as a "little kid” who held a job and lived with his father.
*611 The jury charge on credibility instructed that the defendant’s prior record could be taken into account in assessing his testimony. In "passing on the credibility of Peter Hal-stead’s testimony”, the jury was charged to consider what physical circumstances surrounded the crime and Halstead’s reliability in identifying the alleged assailant.
The applicable statute (CPL 440.10 [1] [g]) provides that a judgment of conviction may be vacated where "[n]ew evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant”.
As newly discovered evidence, defendant submits an affidavit, dated October 10, 1984 from Michael McMickel, a fellow inmate at Green Haven Correctional Facility, who alleges he was a personal acquaintance and criminal accomplice of Hal-stead, and that he was convicted of a felony in 1977 or 1978 for a burglary perpetrated with Mr. Halstead, for which the latter was prosecuted in the Family Court. Armed with this information, defendant’s family and counsel conducted further investigation into Halstead’s Family Court contacts and learned that a juvenile delinquency petition had been filed against him on April 11, 1978, apparently for the felony arrest referred to by Mr. McMickel. Halstead was adjudicated a juvenile delinquent on May 3, 1978 having admitted acts constituting criminal trespass in the third degree (Penal Law § 140.10).[2]
McMickel’s further allegation, that Halstead claimed the District Attorney’s office had promised him favorable treatment in a pending case in return for his testimony against an unidentified person, is too vague as to the time and circumstances to necessitate a hearing for further consideration.
Revelation that the complainant had an isolated juvenile delinquent adjudication would not alone constitute sufficient "newly discovered evidence” to justify setting aside defendant’s conviction. However, Halstead’s contact with the criminal justice system is more extensive. The District Attorney’s *612 office, in preparing its response to this motion, found in its file a previously unrevealed "Grand Jury Witness Information Sheet” for Peter Halstead, dated April 13, 1981. Item 11 "Criminal Record”, reads "CW has a Family Court conviction for purse snatch”. It is conceded that this information was supplied to the District Attorney’s office by Halstead.
As a result of this information, this court directed a further investigation into Halstead’s background. It revealed that at the time of trial, in addition to his 1978 burglary case, Halstead’s record included a pending theft of services charge and two additional earlier juvenile arrests. These arrests were for attempted grand larceny in April 1977, for threatening another (disposition unknown) and a robbery arising out of a "chain snatch”, which resulted in a juvenile delinquency adjudication. Since we cannot assume that Halstead’s purse snatch is in fact the adjudication for a "chain snatch”, he may have had yet another juvenile delinquency adjudication for which there is no court record.
Defendant has requested a hearing on this motion, pursuant to CPL 440.30 (5). For the purposes of this decision, the good faith of the District Attorney’s office is not an issue. An evidentiary hearing to determine the circumstances behind the prosecutor’s failure to disclose and adequately research Halstead’s criminal history is therefore not necessary.[3]
The remaining question is whether this information concerning Halstead is sufficient "newly discovered evidence” to warrant a new trial.
Contrary to the prosecution’s argument, this record of Hal-stead’s criminal activities is "newly discovered” within the statutory meaning. At the time of trial, no one was aware of this record. The difficulty, and ultimate failure, of both counsel and the court, in obtaining reliable and complete information about Halstead, demonstrates that even with due diligence, the defendant could not at trial have produced the evidence outlined herein.
Under the circumstances of this case, this evidence is sufficient to warrant a new trial. Generally, impeaching or contradictory evidence will not support a motion for a new trial (People v Salemi, 309 NY 208 [1955]). However, this rule is not absolute. (Napue v Illinois, 360 US 264 [1959] [evidence, which *613 controverted crucial prosecution witness’ trial testimony that he had not been offered favorable consideration in return for his testimony, held sufficient to warrant a new trial]; People v Maynard, 80 Misc 2d 279, 287-288 [Sup Ct, NY County 1974] [evidence of an eyewitness’ psychiatric history and sexual degeneracy held sufficient to justify a new trial]; cf. People v Watson, NYLJ, June 24, 1985, p 15, col 3 [2d Dept].)
Here, the evidence pertaining to the complainant’s prior antisocial behavior would have been more than impeachment material. It might well have altered the entire texture and focus of the case.
Halstead’s involvement in a chain snatching would have prevented the prosecution from depicting him as a helpless child violated by a hardened criminal. The "bad acts” which led to his other arrests would have allowed a more far-ranging cross-examination than in fact occurred. Had the derogatory information on Halstead’s background been before the jury, this court would have charged that the jury might consider it, as well as defendant’s criminal record, in evaluating the witnesses’ respective credibility.
The central issue in the trial was not mistaken identity, common to many robbery trials, but one of credibility. Hal-stead strengthened the reliability of his identification by emphasizing that he knew the defendant from the neighborhood. There was nothing before the jury to suggest that the complainant had any motive to lie.
Without evidence of Halstead’s criminal history, defense counsel was unable to dispute the prosecutor’s portrayal of Halstead’s spotless record and innocent life-style. Defense counsel’s inability to probe the complainant’s criminal background denied the defendant a crucial aspect of a fair trial. (People v Watson, supra.)[4]
The statute requires that the "newly discovered evidence” create a probability that, had it been adduced at trial, the verdict would have been more favorable to the defendant. Since this conviction depended solely upon the complainant’s word as against the defendant’s, it is probable that the differ *614 ence in credibility highlighted by the prosecutor and the court’s charge weighed heavily on the juror’s minds. Evidence to rebut this difference in credibility would, in my view, have probably affected the jury’s verdict in the defendant’s favor. Therefore, a new trial should be granted.
In light of the above holding, there is no need to reach defendant’s constitutional claim, raised under CPL 440.10 (1) (h).
Motion granted. Judgment is vacated and a new trial ordered.

. At one point, the prosecutor asked the jury to "[l]ook at their backgrounds and see who has the motive to lie”.

. Coincidentally, in 1983 Mr. Halstead was convicted and sentenced for a 1982 robbery upon a plea before me. A violation of probation on that case was pending when Mr. Ramos filed his motion. I recused myself from considering it on April 1,1985.

. The only untapped source of information available is Mr. Halstead himself, who is currently serving concurrent prison terms for a 1985 armed robbery and two misdemeanors.

. That Halstead’s Family Court adjudications did not technically constitute a criminal record is not relevant. The People v Watson court (NYLJ, June 24, 1985, p 15, col 3) found reversible error in the trial court’s refusal, in a one-eyewitness identification case, to allow cross-examination of the acts underlying two charges against the complainant eyewitness which resulted in adjournments in contemplation of dismissal.