■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD T. WALKER, Appellant.—Harvey, J. Appeal from a judgment of the County Court of Ulster County (Vogt, J.), rendered March 13, 1984, upon a verdict convicting defendant of the crime of conspiracy in the second degree.

On March 8, 1983 in the City of Kingston, Peter Ferraro was killed by a shotgun blast from Willie London. During the investigation of that murder, John Olsen was implicated. Olsen was a lifelong friend of London. Testimony later revealed that Olsen provided London with a shotgun which London used to kill Ferraro. London has been convicted of murder in the second degree. The instant appeal concerns an entirely different crime.

During the late evening of March 9, 1983 and the morning of March 10, 1983, Olsen, in the process of being interrogated as to the gun used in the murder, made certain factual representations to the police and to the District Attorney which resulted in his being called to testify before a Grand Jury on March 10, 1983. He was given transactional immunity and thereafter gave testimony indicative of a conspiracy between him and defendant to bring about the death of defendant's former wife, Sally Southwick. As a result of his testimony, defendant was indicted for the crime of conspiracy in the second degree.

At the trial, Olsen was the principal witness on behalf of the People. Essentially, he testified that he was approached by defendant to murder defendant's ex-wife. Upon his refusal to perform the act himself, he agreed to assist defendant in obtaining the services of some third person to carry out the plan. According to Olsen's testimony, defendant authorized him to promise the third person a sum of money to bring about the murder. The precise amount of money was variously described but at no time did the testimony indicate an amount in excess of $4,000.

As a motive for defendant's desire to bring about the demise of his ex-wife, Olsen testified that defendant was incensed because of his ex-wife's contemplated commencement of a civil action against him for the payment of certain alleged debts. The testimony in regard to the amount involved was inconclusive but it was less than $10,000. The self-confessed accomplice testified that defendant gave him a shotgun to be used in the contemplated murder. His further testimony was that immediately thereafter he gave the weapon to London, who had promised to perform the act. No actual attempt was made on Southwick's life and no money was paid by defendant to anyone to further the alleged conspiracy. The record does not disclose any connection between the murder of Ferraro and the alleged conspiracy.

The case proceeded to trial in a situation in which the determination of guilt or innocence depended upon the assessment of the credibility of the unindicted coconspirator and practically nothing else. The jury decided the credibility issue in favor of the People and found defendant guilty. This appeal ensued.

Defendant's first contention is that there was insufficient corroboration of the testimony of the accomplice. "A defendant may not be convicted of any offense upon the testimony

of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]). Although the corroborative evidence must be independent *(see, People v Hudson,* 51 NY2d 233), it is not necessary that it serve to prove the commission of the subject offense. Such evidence will be deemed sufficient if it tends to connect the defendant to the crime so that it can be said that the jury is reasonably satisfied that the accomplice is telling the truth *(see, e.g., People v Glasper,* 52 NY2d 970, 971; *People v Cunningham,* 48 NY2d 938, 940). It has been held that if any evidence of corroboration is presented which " 'tends to connect the defendant with the crime, then the question of sufficiency of that evidence is one for the jury' " *(People v Jones,* 76 AD2d 1007, quoting *People v Brown,* 30 AD2d 279, 281).

There was testimony by Theodore Humphrey that he had a conversation with defendant during which the highly incensed defendant showed him a letter from Southwick's attorney concerning the money owed her. The testimony was that defendant stated that he wanted to get rid of her and indicated his willingness to pay someone to do it. There was also independent testimony from Robert Grasso that Olsen contacted him more than once in an effort to persuade him to carry out the murder of Southwick. On one occasion, the identity of defendant was expressly stated as well as his purpose in wanting the removal of his ex-wife. A further piece of evidence was the taped telephone conversation between Olsen and defendant two days after the Ferraro murder, which could have been construed as proof of knowledge on the part of defendant that the murder weapon used by London was a gun given to Olsen for delivery to London to carry out the murder of Southwick. We conclude that there was sufficient independent evidence to corroborate the accomplice testimony.

As a necessary ingredient in an accusation of the crime of conspiracy, the indictment alleges the overt act of the change of possession of a shotgun from defendant to Olsen. It alleges the additional overt act of the change of possession of the shotgun from Olsen to London. Defendant contends that proof of the overt acts was insufficient for two reasons. The first was that they were not established completely by independent testimony. The second was that the indictment alleged the overt acts as having taken place between February 5, 1983 and February 21, 1983, when the proof was that the acts took place during the early part of March 1983. We find no merit

to either contention. The overt acts must be established in the same manner as every other element of proof required to establish conspiracy. There need not be independent corroborative evidence of each element of the crime *(People v Cunningham,* 48 NY2d 938, 940, *supra; People v Brannon,* 58 AD2d 34, 39).* As to the second contention, when time is not a material ingredient of the crime, the prosecution is not confined to the precise date laid in the indictment *(People v Cunningham, supra,* p 940). Only if such technical defect causes prejudice to a defendant will it constitute grounds for reversal *(see, People v Iannone,* 45 NY2d 589, 599; *People v Cunningham,* 64 AD2d 722, 723, *affd* 48 NY2d 938, *supra).* In this instance, the admission of evidence of the overt acts having taken place later than during the dates specified in the indictment was not prejudicial to defendant and the technical discrepancy may be disregarded.

A more serious issue was the trial court's denial of admission into evidence of hospital records of five hospitalizations pertaining to psychiatric care in conjunction with Olsen's chronic alcoholism. The court was not explicit in stating the reason for denial of the exhibits, except to state that they were irrelevant. If a primary prosecution witness is shown to have suffered from a long-standing drug addiction or an ongoing mental illness, the defense should be afforded an opportunity to show that the witness's capacity was impaired by these conditions *(People v Freeland,* 36 NY2d 518; *People v Rensing,* 14 NY2d 210).

Olsen's first admission was in 1976 and involved an overdose of drugs. He was admitted on a number of occasions in 1977. The last hospital record was for an admission in January 1982. An examination of all of the offered exhibits indicates that the condition of Olsen in 1982 was considerably less serious than that of the prior admissions in 1976 and 1977 and was devoid of any evidence of hallucinations as existed in February 1977. Consequently, we conclude that the trial court did not err in denying the exhibits into evidence because the records do not indicate a permanency of any mental impairment which would allow a jury to conclude that Olsen was suffering from a mental disorder at the time of his testimony.

After defendant rested his case, the People recalled Kathleen Mayone as a rebuttal witness over defendant's objection. The basis for the testimony as offered by the prosecution was to impeach or discredit the testimony of defendant, who on cross-examination had stated that he had never made the statement to anyone that he did not believe that Olsen took

him seriously about a threat to kill his ex-wife. The substance of defendant's testimony was that he never intended to bring about the death of his ex-wife and that he never made any statement indicative of an intent to do so. Consequently, he never stated to anyone that he did not believe that Olsen took him seriously. The witness Mayone testified that such a conversation did take place. A party has the right to impeach or discredit the testimony of an opponent, and such evidence is always competent (Ankersmit v Tuch, 114 NY 51, 55; see, People v Harris, 57 NY2d 335, 345, cert denied 460 US 1047).

Defendant requested a large number of jury instructions which the trial court, for the most part, refused to charge in the specific language of the requests. Obviously, a trial court must fit the various requests into the over-all charge in such a manner as not to overemphasize any particular charge and to make it of a duration limited by the interest span of a layman. We have reviewed the entire charge and find it to be fair and sufficiently explanatory of the issues to properly instruct the jury.

We consider it necessary only to discuss the charge in regard to circumstantial evidence. Defendant contends that the trial court erred by not including the "to a moral certainty" standard. However, it is well established that where the prosecution's case does not rest entirely on circumstantial evidence, the "moral certainty" standard does not apply (People v Barnes, 50 NY2d 375, 380). Here, the evidence against defendant consisted of direct testimonial evidence as well as circumstantial evidence.

The final issue which we consider necessary to discuss concerns defendant's contention that it was reversible error for the trial court not to hold a hearing and set aside the verdict based on alleged newly discovered evidence. The new evidence consisted of affidavits of Marion and Donald Glass which tended to impeach the testimony of Humphrey, one of the prosecution's witnesses. The refusal of a trial court to grant a motion to set aside the verdict is grounds for reversal only when the court abuses its discretion in denying the motion (People v Rivera, 108 AD2d 829, 830). When the proffered proof only tends to impeach or discredit prior testimony, it is within the court's discretion to deny the motion (see, e.g., People v Suarez, 98 AD2d 678, 679; People v Williams, 35 AD2d 1023, 1024). Since the alleged "new evidence" was in the nature of impeachment evidence, it was within the court's discretion to deny the motion to set aside the verdict.

We have examined all other issues raised by defendant on the appeal and find them to be without merit.

Judgment affirmed. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.