*310 OPINION OF THE COURT
Marcy L. Kahn, J.
The defendant, Abdo Marzed, was convicted by a jury verdict of the crime of criminal possession of a weapon in the fourth degree on September 11, 1992 after trial before this court. The defendant now moves to set aside the verdict pursuant to CPL 330.30 (3) and 440.10 (1) (b), (h) on the grounds that (1) there is newly discovered evidence and (2) the conviction was obtained in violation of his constitutional rights under Brady v Maryland (373 US 83 [1963]).[1]
In sum, the defendant has learned that the People’s primary witness at trial, Police Officer John Rossi, has been indicted for perjury allegedly committed in an unrelated criminal prosecution. The defendant contends that he is entitled to relief because this evidence could not have been produced at his trial with due diligence, but is "of such character as to create a probability that had [it] been received at the trial the verdict would have been more favorable” to him (CPL 330.30 [3]). The People oppose the motion.
FACTUAL BACKGROUND

The Trial

Resolution of the defendant’s motion begins with an analysis of the evidence introduced at the defendant’s trial. The People presented two witnesses at the trial, a ballistics expert who was not present at the scene, and Police Officer John Rossi, who arrested the defendant. The defendant took the stand in his own defense. The prosecution and defense versions of the salient facts were completely divergent.
On December 28, 1990, Officer Rossi was patrolling the 34th Precinct in a marked patrol car with his partner. He testified that he received a radio transmission at approximately 3:00 a.m. reporting possession of a gun by an Arabic store owner at 4191 Broadway. Officer Rossi testified that he proceeded to that location and upon entering the store, he saw the defendant, who was behind the counter, "place something under *311 neath the counter by where he was standing.” Rossi maim tained that he had been unable to see the object from in front of the counter. Rossi testified that he then stepped behind the counter to the location where he had seen the defendant place the unknown object, and recovered a loaded automatic weapon from the top of a shelf next to the defendant. According to Rossi, the gun was in open view on the shelf. The People’s ballistics expert, Detective James Gannolo, then testified that the weapon was found operable after testing. The prosecution then rested.
The defendant testified that he was working behind the counter at the cash register when two police officers entered with their guns drawn, ordered everyone to put their hands up and proceeded to frisk all employees and customers. The police officers announced that someone had reported there was a gun in the store. The defendant said he was ordered to admit an officer to the area behind the counter where he was ordered to stand against the wall and was frisked by the officer. The officers continued to search the store, turning things over, until the gun was found behind the counter in a closed but unlocked drawer about a foot or a foot and a half off the floor. The defendant testified that he knew nothing about the gun, did not know who owned it, and had not been aware of its presence in the store.
The defense also introduced several photographs of the interior of the store. They depicted a plexiglás partition atop a glass counter, with glass shelves visible from the front, and with a wooden base extending approximately 1 to l[1]/^ feet up from the floor and which contained wooden drawers accessible from the rear. It was in one of those drawers, according to defendant, that Rossi located the gun.
The jury was thus presented with two versions of the facts which were irreconcilable. The jury’s resolution of the factual dispute, therefore, depended entirely on its assessment of the relative credibility of these two witnesses.
In his summation, the prosecutor vigorously argued Officer Rossi’s credibility and was admonished more than once for personally vouching for the witness’ truthfulness. Despite sustained objections and curative instructions by the court, the prosecutor told the jury that the officer was "very truthful,” "just said the truth,” and had no motive to lie. He stated: "What motive would this officer have to come here and make up a story? I submit that he does not have a motive.” He went *312 on to characterize the defendant as an interested witness who had a significant motive to lie. The prosecutor clearly urged the jury to convict the defendant based on crediting Officer Rossi’s version of what happened.
The jury found the defendant guilty of criminal possession of a weapon in the fourth degree (Penal Law § 265.01). Conviction of this crime requires "knowing” possession, that is, the defendant must be aware that he possesses the weapon (see, Penal Law § 15.00 [2]), and must either "have physical possession or otherwise * * * exercise dominion or control over” the property in question (Penal Law § 10.00 [8]). Clearly, the jury in this case rejected the defendant’s claim that he was unaware of the presence of the gun in the store and instead accepted Officer Rossi’s testimony that he saw the defendant hiding something which turned out to be the gun.

The Newly Discovered Evidence

On October 5, 1992, following the jury’s verdict in this case but prior to sentencing of the defendant (which has not occurred to date), an indictment was filed by a New York County Grand Jury charging Officer Rossi with the crimes of perjury in the first degree and making a punishable false written statement in connection with his role in an unrelated matter. The indictment in that case alleges that Officer Rossi arrested Luis Mora and three others for gun possession following the stop of their car on December 7, 1991. The indictment charges that in a sworn criminal complaint, and in an appearance before the Grand Jury, Officer Rossi stated that he observed Mora drop a loaded gun in the patrol car as he was being transported to the precinct. The indictment alleges that these statements by Officer Rossi were knowingly false. According to a news report published in the New York Post on October 7, 1992, Officer Rossi’s sworn statement that he recovered the gun after he saw Mora drop it was contradicted by another police officer who actually found the gun under a seat in Rossi’s patrol car an hour or two after Mora’s arrest.
On November 16, 1992, the date originally set by this court for sentencing of the defendant Marzed, the trial assistant informed the court and the defendant of the indictment pending against Officer Rossi and provided the court and counsel with copies of the New York Post article. In this affirmation submitted in opposition to the present motion, the assistant asserts that he was personally unaware of the inves *313 tigation involving Officer Rossi until he read about it in the Post.
While fully crediting the assistant’s assertion that, at the time of defendant Marzed’s trial in September, he personally had no knowledge of the investigation which preceded Officer Rossi’s indictment, this court notes that the court file in the case brought against Rossi established that the District Attorney’s office had obtained the following summary of a statement taken from Officer Rossi by one of the District Attorney’s investigators sometime in August 1992: "Officer Rossi said that the investigation involved a gun collar. I think that he said that it involved three defendants and that all were not being transferred in his RMP. Officer Rossi said that he brought the defendants inside to do the paperwork and that it was approximately one or two hours before the end of the tour. He never searched the car before he left the car. When the new tour came on, officers searched the RMP and found a gun. They brought the gun inside and handed it to Rossi, who felt foolish at leaving a weapon in the car. Rossi remembered hearing something drop in the car but neglected to search the automobile because he was more concerned with processing the arrest.”
Defendant Marzed asserts in an affidavit in support of his motion to set aside the verdict that at the time of his trial in September 1992, he was unaware of the investigation against Officer Rossi. Indeed, since Grand Jury proceedings are secret, he could not have learned about the investigation even with the utmost diligence. He contends, however, that the trial assistant should have known that the office was pursuing a perjury investigation involving the primary witness against him. In a case entirely dependant upon credibility, the defendant asserts, had he known about the investigation at the time of this trial, and been able to cross-examine Rossi about it, the verdict probably would have been more favorable. Since he was not so informed, he argues, he is entitled to a new trial.
The People contest the characterization of the perjury investigation involving Officer Rossi as exculpatory evidence, and assert that this evidence was neither material to defendant Marzed’s guilt nor evidence of a motive to fabricate his testimony in this case. The People further argue that the evidence of the perjury investigation involving Officer Rossi was "merely impeachment” material, which does not constitute "newly discovered evidence” justifying a new trial under *314 the statute. They also contend that disclosure of the facts of the investigation to defendant during the trial would not have created a reasonable probability of a more favorable result, as even if he were to be asked about the allegations at a retrial, Officer Rossi could either refuse to answer on Fifth Amendment grounds or deny the charges.
CONCLUSIONS OF LAW

CPL 330.30

The defendant moves for a new trial under CPL 330.30 (3) which provides:
"At any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon the following grounds * * *
"(3) That new evidence has been discovered since the trial which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant.”
This provision codifies the requirements set forth by the Court of Appeals in People v Salemi (309 NY 208 [1955]). Although in Salemi the Court was interpreting former Code of Criminal Procedure § 465 (7), the precursor of CPL 330.30 (3), the same standards pertain to a motion brought under the current statute. (See, Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 330.30, at 47-48.) The Salemi requirements for the grant of a new trial on the ground of newly discovered evidence are that the new evidence:
(1) must be such as will probably change the result if a new trial is granted;
(2) must have been discovered since the trial;
(3) must be such as could not have been discovered before the trial by the exercise of due diligence;
(4) must be material to the issue;
(5) must not be cumulative to the former issue;
(6) must not be merely impeaching or contradicting the former evidence. (People v Salemi, 309 NY 208, 215-216 [1955].)
These requirements can be condensed into three basic ques *315 tions: (1) could an exercise of due diligence have led to discovery of the evidence before trial? (2) is the evidence material, not cumulative and not merely impeaching of former evidence? and (3) would the evidence probably have changed the verdict at trial?[2] This court must apply this three-part test to the evidence that Officer Rossi committed perjury when he testified before the Grand Jury in the Mora case, as alleged by the District Attorney’s office.
(1) Due Diligence
It is uncontested that the evidence which gives rise to the defendant’s motion was not discovered by either the trial assistant or defense counsel prior to the conclusion of the trial. In fact, it appears that neither counsel learned of the evidence until the appearance of the New York Post article several weeks after the verdict. The matter was apparently known only to the District Attorney’s office, Rossi, and members of the New York City Police Department until October, when the indictment was filed and the Post article appeared. While the trial assistant is chargeable with knowledge of information known to other members of his office (Santobello v New York, 404 US 257, 262 [1971]; People v Simmons, 36 NY2d 126, 132 [1975]), the defense had no way of knowing, even with the exercise of due diligence, of the pendency of the Rossi investigation. Therefore, the defendant has met the first prong of the Salemi test.
(2) Mere Impeachment
With regard to the second prong of the test, where the newly discovered evidence proffered by the defendant "only tends to impeach or discredit prior testimony, it is within the court’s discretion to deny the motion [citations omitted].” (People v Walker, 116 AD2d 948, 952 [3d Dept 1986].)
*316 In the instant case, the People characterize the new evidence proffered by defendant Marzed as merely impeachment evidence and, relying on Walker (supra), urge that the motion be denied. Walker and like cases, however, are inapposite. In Walker, there was a great deal of additional evidence of the defendant’s guilt. The Appellate Division held merely that the trial court did not abuse its discretion in denying a new trial in view of the prosecution’s considerable evidence. Similarly, in the other cases cited by the People on this point, the proffered new evidence was in no sense central to the issue of the defendant’s guilt. (See, People v Wagner, 51 AD2d 186 [3d Dept 1976] [proffer of expert medical opinion that the defendant’s wife might fit profile of batterer within the meaning of the battered child syndrome held without bearing on the defendant’s guilt]; People v Wood, 94 AD2d 849 [3d Dept 1983] [conviction held not to rest upon the testimony of witness whose credibility was sought to be impeached with new evidence].)
In the present case, by contrast, there was no other evidence of defendant’s guilt aside from Officer Rossi’s testimony. Officer Rossi was the crucial witness against Marzed, and his unimpeached testimony clearly led to Marzed’s conviction. This conclusion, while seemingly obvious, is buttressed by the prosecutor’s urgings in summation that the jury credit Rossi’s testimony as opposed to that of defendant. It seems clear, then, that in this case, the jury’s assessment of Rossi’s credibility was crucial to its verdict. Thus, in view of the total absence of any impeaching evidence, any new evidence which might have tended to undermine Officer Rossi’s credibility could have had a powerful effect on the verdict.
Under both Federal and State law, it has long been recognized that courts assess impeachment evidence in a much different light where the jury’s assessment of credibility is necessarily determinative of guilt or innocence. "The jury’s estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant’s life or liberty may depend.” (Napue v Illinois, 360 US 264, 269 [1959].) For example, the defendant is deprived of a fair trial when the prosecution withholds from the defendant favorable impeachment evidence concerning a witness whose reliability may be determinative. (Napue v Illinois, supra; Giglio v United States, 405 US 150 [1972]; People v Cwikla, 46 NY2d 434, 441 [1979]; *317 see also, People v Wallert, 98 AD2d 47 [1st Dept 1983] [People’s failure to inform defense of the rape victim’s intention to file a civil suit for use in impeachment entitled the defendant to a new trial].)
The People contend that these cases are distinguishable from this case,[3] as in each instance the withheld evidence related to the complainant’s possible motive to fabricate. Such evidence, of course, is not barred by the collateral evidence rule. (See, Badr v Hogan, 75 NY2d 629 [1990].) The People assert that because in this case the collateral evidence rule would bar introduction of extrinsic proof of Rossi’s misconduct, the new evidence here should be relegated to the status of "merely impeaching,” and collateral. The People urge that Officer Rossi had no motive to lie in this case. They contend that the fact that Rossi may have perjured himself in an unrelated matter does not create a motive to fabricate in this trial, and thus has no probative value as to Marzed’s guilt.
This is a specious argument. Where the People’s case turns on the credibility of a witness who himself is the subject of a criminal prosecution, a motive may well exist for the witness to curry favor with authorities. In such cases, the defense is entitled to cross-examine the witness to determine whether such a motive exists. (People v Stridiron, 33 NY2d 287 [1973]; People v Roth, 30 NY2d 99 [1972]; People v Buchanan, 57 AD2d 686 [3d Dept 1977].) In any event, it is well established that a witness’ credibility is always subject to attack on cross-examination by reference to specific instances of misconduct demonstrating moral turpitude, regardless of whether a motive can be gleaned for such behavior, and even in the absence of a criminal conviction for such conduct. (See, People v Sorge, 301 NY 198 [1950].) The impeachment evidence that Officer Rossi had lied to the Grand Jury in another gun case would have had a tremendous impact on the jury’s view of his credibility in this case.
In People v Ramos (132 Misc 2d 609 [Sup Ct, Kings County 1985]), Justice Anne Feldman granted a new trial due to the acquisition of new evidence relating to the complainant’s criminal history. The case involved a robbery in which the verdict depended entirely on the jury’s assessment of the complainant’s credibility. Justice Feldman observed:
*318 "[T]he evidence pertaining to the complainant’s prior antisocial behavior would have been more than impeachment material. It might well have altered the entire texture and focus of the case. * * *
"Had the derogatory information on [the complainant’s] background been before the jury, this court would have charged that the jury might consider it, as well as defendant’s criminal record, in evaluating the witnesses’ respective credibility.
"The central issue in the trial was not mistaken identity, common to many robbery trials, but one of credibility * * * There was nothing before the jury to suggest that [the complainant] had any motive to lie.
"Without evidence of [the complainant’s] criminal history, defense counsel was unable to dispute the prosecutor’s portrayal of [the complainant’s] spotless record and innocent lifestyle. Defense counsel’s inability to probe the complainant’s criminal background denied the defendant a crucial aspect of a fair trial.” (Supra, at 613.)
Here, as in Ramos (supra), the new evidence bore significantly on the credibility of the People’s sole eyewitness to the crime. Whether it explicitly created a motive for the witness to fabricate is not dispositive. The two versions of the events in question were completely irreconcilable and uncorroborated, and neither Rossi nor defendant was impeached in any respect. Here, as in Ramos, the new evidence is of critical importance to the central issue of credibility of the prosecution’s sole eyewitness, and, thus, is not merely impeaching or collateral. Accordingly, it meets the second prong of the Salemi test.
(3) Probability of Acquittal
In this third prong of the Salemi test, the court must assess the reasonable probability of a different verdict at a new trial where the new evidence is disclosed to the jury. The court does not find persuasive any of the People’s arguments that this evidence would not have changed the verdict. Although it is true that a witness may not be cross-examined with the fact of an indictment (see, Richardson, Evidence § 506 [Prince 10th ed]), questioning about the facts underlying the indictment is permissible. (See, Richardson, op. cit.; People v Allen, 67 AD2d 558 [2d Dept 1979], affd 50 NY2d 898 [1980].) Officer Rossi could certainly be asked on cross-examination if he had lied *319 under oath in a prior case involving the recovery of a gun. The People correctly observe that, if Officer Rossi were to deny the fact, or invoke his Fifth Amendment privilege on the witness stand, the defendant would be bound by his response. Nonetheless, experience teaches that there are many ways to undermine the credibility of a witness when skilled, creative counsel possesses significant impeachment material. (See, e.g., People v Jones, 70 NY2d 547, 550-551 [1987]; People v Ranghelle, 69 NY2d 56 [1986]; People v Perez, 65 NY2d 154, 158 [1985] ["no one is better equipped or motivated than defense counsel to determine how (impeachment material) may be useful to the defense”]; People v Rosario, 9 NY2d 286, 290 [1961].) In addition, if the jury were informed of the perjury committed by Officer Rossi, this court could charge that the jury could consider it in assessing the witnesses’ respective credibility.
In two recent Federal decisions involving facts strikingly similar to those presented here, the defendant was granted a new trial where, following his conviction, he learned that Federal agents who testified against him were subjects of criminal investigations. (United States v Bravo, 808 F Supp 311 [SD NY 1992]; Alvarez v United States, 808 F Supp 1066, supra [SD NY 1992].)[4] Although in both of these cases there were other witnesses against the defendant, the existence of significant new impeachment evidence concerning a "crucial” witness in each case was found to create a reasonable probability of acquittal if the new evidence were known to the jury. (Alvarez v United States, supra, at 1096; United States v Bravo, supra, at 325.)
This case presents an even more compelling argument than existed in Bravo or Alvarez (supra) that the outcome would favor the defense if the new evidence were known to the jury. Here, the People’s entire case was based upon the unimpeached testimony of a single police witness, whose credibility was contrasted by the prosecutor in summation with that of the defendant. The Assistant District Attorney urged the jury to consider which witness had a motive to lie, and suggested that there was no reason for them to disbelieve Rossi’s testi *320 many. Had the jury known that Rossi had previously lied under oath in another gun case, it is probable that the verdict would have been more favorable to the defense. Defendant has, therefore, satisfied the final prong of the Salemi test.
CONCLUSION
For these reasons, the verdict is set aside, and a new trial is ordered.

. This is not properly a motion to vacate judgment pursuant to CPL 440.10 (1) (b), (h) because the defendant has not yet been sentenced and, therefore, no judgment has been entered. (CPL 1.20 [15].) Accordingly, the court will treat the motion as invoking only the applicable provisions of CPL 330.30 (3) (motion to set aside verdict), and will not address either the fraud or constitutional claims under CPL 440.10.

. Although Salemi (supra) speaks in terms of what a future jury would do with the evidence, CPL 330.30 (3) addresses itself to whether the new evidence would probably have changed the original jury’s verdict. In this case, because the evidence was in existence prior to the defendant’s trial, the court’s determination of this motion would be the same, regardless of whether a prospective or retrospective view is taken. (Cf., Alvarez v United States, 808 F Supp 1066, 1089, n 10 [SD NY 1992] [construing the similar provision of Federal Rules of Criminal Procedure rule 33 not to require the court to engage in the "surreal” analysis of whether the original jury would have been led to a different verdict by hearing evidence not yet in existence].)

. The fact that these cases involved intentional failures to disclose impeachment evidence is not significant in the context of CPL 330.30. (Cf., CPL 440.10 [1] [b].)

. While these decisions are not binding authority (see, New York R. T. Corp. v City of New York, 275 NY 258, 265 [1937], affd 303 US 573 [1938]), they arise under Federal Rules of Criminal Procedure rule 33 which requires a defendant seeking a new trial on the ground of newly discovered evidence to meet the same test as set forth in CPL 330.30 (3) and Salemi (supra). (See, Alvarez v United States, supra, at 1089.)