# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 93
The People &c.,
        Respondent,
    v.
Clarence Rouse,
        Appellant.

John Vang, for appellant.
Robert McIver, for respondent.

FAHEY, J.:

In People v Smith (27 NY3d 652 [2016]) we observed "that law enforcement witnesses should be treated in the same manner as any other prosecution witness for purposes of cross-examination" (id. at 659). In this case we recognize that, much as a lay

witness may be subject to cross-examination with respect to acts of dishonesty not proven at trial, so too may a law enforcement witness be impeached through such questioning. Applying that rule here, we conclude that the trial court abused its discretion as a matter of law and committed reversible error in refusing to allow defendant to cross-examine the two police officers central to this case in two specific areas involving officer dishonesty.[1]

## I.

At 2:30 a.m. on August 11, 2013 a person followed a group of teenagers on a public street in a neighborhood in the Bronx and fired a single gunshot at them. No one was struck or injured. Critical to this appeal, two police officers identified the shooter as defendant. The officers were patrolling the neighborhood at the time of that incident, and both officers saw defendant raise the gun to eye level, fire the gun, drop that weapon, and flee on foot. One of the officers initially chased defendant on foot but lost sight of him. Several minutes later, however, the officers saw defendant while they were driving in their police cruiser. They exited that vehicle and arrested him.

One of the officers collected the gun almost immediately after defendant dropped it. That weapon was not tested for fingerprints or for DNA evidence. Consequently, at trial, the People's case rested almost entirely on the identification of defendant as the shooter by the police officers, both of whom said that defendant fired the gun from eye

---

[1] The first of those areas considered alleged misstatements that one officer made to a federal prosecutor with respect to the officer's participation in a ticket-fixing scheme. The second of those areas considered judicial determinations in which each officer was found to have given unreliable testimony.

level, and that they had a clear, well-lit view of defendant at the time of the shooting. The jury credited that testimony and defendant was convicted of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), criminal use of a firearm in the first degree (§ 265.09 [1] [a]), and two counts of criminal possession of a weapon in the second degree (§§ 265.03 [1] [b], [3]).

On appeal, the Appellate Division affirmed the judgment of conviction, reasoning that the verdict is supported by legally sufficient evidence (159 AD3d 530, 530 [1st Dept 2018]), and that defendant's challenges to various evidentiary rulings and comments of the trial court lacked merit (id. at 531). A Judge of this Court subsequently granted defendant leave to appeal (32 NY3d 941 [2018]).

II.

Defendant initially contends that the evidence is legally insufficient to establish the element of intent necessary to support his convictions of attempted murder in the second degree and, by extension, criminal use of a firearm in the first degree. We disagree (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).

" '[I]ntent is rarely proved by an explicit expression of culpability by the perpetrator' " (People v Hatton, 26 NY3d 364, 370 [2015], quoting People v Bueno, 18 NY3d 160, 169 [2011] [internal quotation marks omitted]). "In recognition of the inherent challenges to demonstrating an actor's mental state, [we have long] accepted that '[i]ntent may be inferred from conduct as well as the surrounding circumstances' " (id. at 370, quoting People v Steinberg, 79 NY2d 673, 682 [1992]; see People v Bracey, 41 NY2d 296, 301 [1977], rearg denied 41 NY2d 1010).

In view of those rules, and viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), we conclude that there is a valid line of reasoning and permissible inferences from which a rational jury could have found that defendant had the requisite intent to kill (see generally People v Danielson, 9 NY3d 342, 348-349 [2007]). The testimony of the subject officers established, among other things, that defendant was seen chasing the group of fleeing teenagers on foot in advance of the shooting before he stopped, steadied the gun at eye level, and fired in their direction. That testimony could have allowed a rational person to reach the conclusion that defendant intended not to warn or to merely scare in shooting the gun, but instead to kill one of those teenagers (see People v Bennett, 79 NY2d 464, 469-470 [1992]; People v Yazum, 13 NY2d 302, 304 [1963]).

III.

Turning to the primary issue before us, defendant contends that he was denied a fair trial inasmuch as the trial court refused to allow him to explore multiple grounds for impeachment on cross-examination, namely, (a) misstatements that one of the officers made to a federal prosecutor in a different matter, and (b) prior judicial determinations in which each officer was found to have given unreliable testimony. On these points, we agree with defendant.

Truth, though rarely pure and never simple, is one of society's most essential virtues. In the criminal justice context, cross-examination is universally recognized as a preeminent truth-seeking device (see Jerome Prince, Richardson on Evidence § 6-301 [Farrell 11th ed 1995]), and it "is the principal means by which the believability of a

witness and the [veracity] of [the witness's] testimony are tested" (Davis v Alaska, 415 US 308, 316 [1974]). Subject to the discretion of a trial judge to impose reasonable limits based on concerns about, among other things, prejudice, confusion of the issues, and relevance, "the cross-examiner is not only permitted to delve into the witness'[s] story to test the witness'[s] perceptions and memory, but . . . has traditionally been allowed to impeach, i.e., discredit, the witness" (id.; see Delaware v Van Arsdall, 475 US 673, 679 [1986]).

"Given these central principles, prosecution witnesses—and indeed, even a testifying defendant—may be cross-examined on 'prior specific criminal, vicious or immoral conduct,' provided that 'the nature of such conduct or the circumstances in which it occurred bear logically and reasonably on the issue of credibility' " (People v Smith, 27 NY3d 652, 660 [2016], quoting People v Sandoval, 34 NY2d 371, 376 [1974]). Along those lines, in People v Smith (27 NY3d 652) we considered the suitability of cross-examination of a police officer based on allegations of false arrest in a federal lawsuit. There we concluded that, even where a prior bad act by a law enforcement officer is not criminal, " 'it may be a proper subject for impeachment questioning where it demonstrates an untruthful bent or significantly reveals a willingness . . . to place the advancement of his individual self-interest ahead of principle or of the interests of society' " (id. at 661, quoting People v Walker, 83 NY2d 455, 461 [1994]).

Based on that maxim, we established an uncomplicated rule for determining whether a defendant should be permitted to ask a law enforcement officer about allegations that the officer had committed prior bad acts (see id. at 662). That is, provided that they

have a good faith basis for the inquiry, we said that defendants should be permitted to explore specific allegations of wrongdoing relevant to the credibility of the law enforcement witness, subject to the discretion of the trial court (see id.).[2] "[L]aw enforcement witnesses should be treated in the same manner as any other witness for purposes of cross-examination. The same standard for good faith basis and specific allegations relevant to credibility applies – as does the same broad latitude to preclude or limit cross-examination" (id.).

## A.

Applying those principles here, we conclude that the court abused its discretion as a matter of law in refusing to allow defense counsel to explore misstatements one of the officers made to a federal prosecutor.

At the suppression hearing held before trial, that officer's testimony supported defendant's contention that, in preparing to testify in an unrelated federal criminal proceeding, he had misled the prosecutor in that case with respect to his involvement in a ticket-fixing scheme. That officer also acknowledged that the firearm at issue in the federal proceeding – which he and his police partner had recovered – was suppressed. The People revisited that issue at trial, eliciting testimony from that officer that he had been involved in the ticket-fixing scheme and had been disciplined by the NYPD with respect to those activities. Defense counsel cross-examined that officer with respect to that issue, but was

_____

[2] A "good faith basis" requires only that counsel have "some reasonable basis for believing the truth of things" about which counsel seeks to ask (People v Alamo, 23 NY2d 630, 633 [1969]; see Smith, 27 NY3d at 668).

not permitted to explore what defense counsel characterized as that officer's lies to the federal prosecutor regarding those activities.

The trial court questioned whether that dishonesty was a bad act, concluding, among other things that the elicitation of that officer's "lack of specificity" to the federal prosecutor would be "quite damaging" and that, absent proof that officer was either "administratively sanctioned" with respect to his dealings with that prosecutor or "federally charged," there was no "good faith basis for" exploring that question. That is, the court limited exploration of that officer's prior bad acts to his participation in the ticket-fixing scheme, and did not permit inquiry with respect to that officer's deceit of the federal prosecutor.

That ruling was an abuse of discretion as a matter of law. The trial court accurately noted the potential difficulty in determining whether that officer affirmatively lied to the federal prosecutor absent knowledge of the questions that the federal prosecutor asked him. However, defense counsel had a good faith basis for the inquiry inasmuch as the officer's suppression testimony acknowledged that he had not been immediately forthright with the federal prosecutor. Indeed, defense counsel pointed the court's attention to two federal suppression determinations—discussed further below—that further bolstered defense counsel's good faith basis to inquire into the officer's claimed deceit. In one of those decisions, a federal court stated that the officer conceded in his testimony that he had admitted the truth to the prosecutor only when confronted with irrefutable proof making it impossible for him to maintain his prior inconsistent statements. In the other suppression determination, the federal court characterized the officer's conduct with respect to the

prosecutor as "not forthcoming" and his excuses for his lack of honesty as "difficult to credit." A "good faith basis" requires only that counsel have "some reasonable basis for believing the truth of things" about which counsel seeks to ask (People v Alamo, 23 NY2d 630, 633 [1969]; see e.g. Smith, 27 NY3d at 668). That standard was undeniably met here.

To be sure, when cross examined by defense counsel in the present matter, the police officer may have denied that he lied and may have proffered explanations for his behavior that a jury would be entitled to credit. Nevertheless, in the absence of a bar to cross-examination with respect to bad acts of a witness that have never been formally proved at trial (see Walker, 83 NY2d at 461), defense counsel should have been allowed to explore the deception in that officer's disclosures to the federal prosecutor. The record would then stand with whatever answer that officer might have provided. Thus, while we recognize that the scope of cross examination rests within the trial court's discretion, here, "it was an abuse of discretion to restrict defendant's right to cross-examine [a] key prosecution witness[] based on [an] [apparent] finding that some unidentified prejudice outweighed the probative value of the questions. The questions had a good faith basis and there is no suggestion . . . that the main issues would have been obscured and the jury confused" (Smith, 27 NY3d at 668).

B.

We also conclude that the trial court abused its discretion as a matter of law in precluding cross-examination of both officers with respect to prior judicial determinations that addressed the credibility of their prior testimony in judicial proceedings.

Before jury selection, the People moved to preclude defendant from cross-examining either officer "with respect to decisions by Judges in the Southern District in New York, specifically in the Tyquan Williams suppression hearing and the James Russell suppression hearing." In United States v Williams (No. 11 Cr. 228, 2011 WL 5843475 [SD NY 2011]) the suppression court concluded that the traffic infraction that both officers claimed to have justified the stop in question was contrived (see id. at *5). In United States v James Russell (No. 11 Cr. 312 [SD NY 2011]) the suppression court concluded that one of the officers testified incredibly with respect to a frisk that resulted in the seizure of the firearm in question. Here, the court initially reserved decision, but during trial it denied defendant's request to use cross-examination to show "that another judge found [them] incredible."

The "[c]ommission of perjury or other crimes or acts of individual dishonesty, or untrustworthiness . . . will usually have a very material relevance" with respect to a witness's credibility (People v Sandoval, 34 NY2d 371, 377 [1974]). Courts of this state are, of course, generally vested with the discretion to control the scope of cross-examination (see People v Hayes, 17 NY3d 46, 53 [2011], cert denied 565 US 1095). Along those lines, there is no rule that explicitly precludes inquiry with respect to a prior judicial determination that a police officer's testimony was unworthy of belief (see People v Marzed, 161 Misc 2d 309, 318-319 [Crim Ct, New York County 1993] [permitting cross-examination of an officer regarding whether he had lied under oath in a prior case]; see also People v Wilson, 2016 NY Slip Op 30734[U] [Sup Ct, Bronx County 2016]

[recognizing the probative value of a judicial ruling with respect to the credibility of a witness]).

Defendant urges adoption of the seven-part test for assessing the probity and relevance of a prior incident in which a court has criticized a witness's testimony as unworthy of belief that was set out by the United States Court of Appeals for the Second Circuit in United States v White (692 F3d 235 [2d Cir 2012]).[3]  While at least one more federal circuit court applies the White framework (see United States v Woodard, 699 F3d 1188, 1195 [10th Cir 2012]), other federal courts have concluded merely that the determination whether a party should be allowed to cross-examine a witness about a prior judicial determination finding that witness incredible lies within the trial court's discretion

---

[3] In White, the Second Circuit reiterated that, while a trial court may impose "reasonable limits on cross-examination to protect against, e.g., harassment, prejudice, confusion, and waste, it must also give wide latitude to a defendant in a criminal case to cross-examine government witnesses" (White, 692 F3d at 248 [internal quotation marks omitted]).  That latitude, the Second Circuit added, may require a trial court to permit a defendant to cross-examine an officer with respect to a prior occasion when the officer's testimony in another case has been criticized by a court as unworthy of belief (see id.).

The determination whether the trial court must permit such cross-examination turned on the consideration of these seven factors in determining probity and relevance of a prior incident in which a court has criticized a witness's testimony as unworthy of belief: "(1) 'whether the prior judicial finding addressed the witness's veracity in that specific case or generally'; (2) 'whether the two sets of testimony involved similar subject matter'; (3) 'whether the lie was under oath in a judicial proceeding or was made in a less formal context'; (4) 'whether the lie was about a matter that was significant'; (5) 'how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness'; (6) 'the apparent motive for the lie and whether a similar motive existed in the current proceeding'; and (7) 'whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible' " (id., quoting United States v Cedeno, 644 F3d 79, 82-83 [2d Cir 2011]).

(see United States v Dawson, 434 F3d 956, 959 [7th Cir 2006]; United States v Whitmore, 359 F3d 609, 616 [DC Cir 2004]).

Consistent with our own case law, we take the latter, plainer of those approaches and simply state that there is no impediment to inquiry with respect to a prior judicial determination that a police officer's testimony was unworthy of belief, subject to the discretionary determination of the trial court that the probative value of such examination would outweigh its prejudicial effect (see generally People v Scarola, 71 NY2d 769, 777 [1988]). We succinctly set out the "logical framework for analysis of [that] issue":

> "First, counsel must present a good faith basis for inquiring, namely, the [proceeding] relied upon; second, specific allegations that are relevant to the credibility of the law enforcement witness must be identified; and third, the trial judge exercises discretion in assessing whether inquiry into such allegations would confuse or mislead the jury, or create a substantial risk of undue prejudice to the parties (see Delaware v Van Arsdall, 475 US 673, 679 [1986]; see People v Harrell, 209 AD2d 160, 160 [1st Dept 1994])" (Smith, 27 NY3d at 662 [opinion by Abdus-Salaam, J.]).

Applying those principles here, we conclude that the trial court abused its discretion as a matter of law in refusing to allow defendant to cross-examine the officers with respect to determinations made in Williams and Russell. In both federal rulings, the courts found the police officers' testimony incredible in a manner which suggested that the officers may have falsely testified in order to obtain a desired result. Such determinations were probative of the officers' credibility in the current prosecution, where defendant's entire defense was aimed at convincing the jury that the officers were incorrectly identifying him as the shooter in order to avoid backlash for allegedly assaulting defendant upon arrest or

for capturing an innocent bystander. The only countervailing prejudice articulated by the court in precluding defense counsel from this line of inquiry was concern that the jury may view the prior judicial determinations of credibility as binding. Such concern, however, could be mitigated by providing the jury with clarifying or limiting instructions, and that prejudice does not outweigh the probative and impeaching value of the inquiry.

C.

The effect of the trial court's errors in precluding defense counsel's proposed inquiries into the officers' credibility is glaring. While defendants are entitled to only an opportunity for effective cross-examination, and not to unbounded exploration of any matter (see generally People v Corby, 6 NY3d 231, 238 [2005]), the evidence of guilt here is not overwhelming. Defendant's convictions hinged on the identification of defendant as the shooter by the officers. Although the gun used in the shooting was seized almost immediately after that incident, no fingerprint or DNA evidence links defendant to the crime. Given the nature of this case – in which defendant is linked to the crimes only through the testimony of the subject officers – the court's evidentiary error in precluding cross-examination of areas of dishonesty that have material relevance with respect to a witness's credibility (see Sandoval, 34 NY2d at 377) is not harmless (see generally Crimmins, 36 NY2d at 241-242).

IV.

In view of our conclusion with respect to the court's restriction of his opportunity for cross-examination, we need not reach defendant's remaining contentions.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order reversed and a new trial ordered.  Opinion by Judge Fahey.  Chief Judge DiFiore and Judges Rivera, Stein, Garcia, Wilson and Feinman concur.

Decided November 25, 2019