11-772-cr
United States v. White

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2011

(Argued: February 17, 2012    Decided: August 30, 2012    Amended September 28, 2012)

Docket No. 11-772-cr

─────────────────────

UNITED STATES OF AMERICA,

*Appellee*,

− v. −

LANCE WHITE,

*Defendant-Appellant.*

─────────────────────

Before: JACOBS, *Chief Judge*, CALABRESI and POOLER, *Circuit Judges*.

Lance White appeals from his conviction for possession of a weapon by a person previously convicted of a felony. He argues, *inter alia*, that the district court (Garaufis, *J.*) improperly (a) excluded evidence that the Government initially charged the other occupants of the vehicle in which he was traveling with possession of the firearm that the Government claimed was found on his person; and (b) improperly limited cross-examination of a Government witness at trial by barring White's use of a prior adverse credibility finding in a similar but unrelated case. We conclude that the district court's evidentiary rulings were erroneous and that the errors were not harmless. We therefore VACATE the judgment of conviction and REMAND the case to the district court for a new trial.

*Chief Judge* JACOBS dissents in a separate opinion.

DAVID A. LEWIS, Federal Defenders of New York, New York, N.Y., *for Defendant-Appellant*.

ALI KAZEMI, Assistant United States Attorney (Emily Berger, Assistant United States Attorney, *on the brief*), *for*

1

Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, N.Y., *for Appellee*.

CALABRESI, *Circuit Judge*:

Defendant-Appellant Lance White was convicted, after a jury trial, of being a felon in possession of a firearm. He was sentenced to 235 months' imprisonment and five years' supervised release. The testimony at trial established that White was traveling in a minivan with four women on the day of his arrest. During a stop and frisk, one firearm was allegedly recovered from White's pocket and two firearms were recovered from the purse of one of the other occupants of the vehicle. The defense's strategy at trial was to seek to demonstrate that the first of these firearms was found in the vehicle and not on White's person.

At trial, the district court excluded two crucial pieces of evidence. First, the court excluded evidence that the four women traveling in the same minivan as White were initially charged with possession of the gun allegedly found on White's person. The court, relying on case law established outside our circuit, concluded that the Government's charging decisions are never proper subjects for cross-examination or argument. We disagree and reject such a categorical bar on the admissibility of charging decisions. We hold that district courts may not presumptively exclude evidence of the Government's charging decisions without an inquiry into its relevance and probative value to the respective case. Here, we conclude that the evidence was not only relevant to White's defense, but also highly probative as to the credibility of testimony provided by the officers involved.

The court also excluded evidence of a prior judicial finding that discredited the testimony of a Government witness. When it did this, the court did not have the benefit of

2

our decision in *United States v. Cedeño*, 644 F.3d 79, 82-83, (2d Cir.), *cert. denied*, 132 S. Ct. 325 (2011), which set out seven non-exhaustive factors for courts to consider in determining the probity and relevance of a prior incident in which a court has criticized a witness's testimony as unworthy of belief. In the instant case, these factors weigh in favor of admissibility. We disagree with the district court's conclusion that the prior adverse credibility finding was not probative of the witness's veracity. Evidence that might lead a jury to conclude that the officer was willing to lie in a similar case in order to secure a criminal conviction is both relevant and probative. This is particularly so because, in the case before us, White's defense centered on proving that the same detective and other officers lied about finding a weapon on his person.

Finally, neither of these errors was harmless. The excluded evidence spoke directly to a critical element of the Government's case and its exclusion prevented White from presenting a complete defense. Accordingly, the judgment of conviction of the district court is VACATED and the case is REMANDED for proceedings consistent with this opinion.

## I.    BACKGROUND

On August 6, 2008, acting on information provided by a confidential informant, a joint task force of the Federal Bureau of Investigation ("FBI") and the New York City Police Department ("NYPD") stopped a maroon minivan in Queens, New York. The minivan was occupied by Lance White and four women. A search of the vehicle resulted in the recovery of three firearms, one of which was allegedly found in White's right front pocket. White was indicted for possession of a firearm by a person previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

3

**A. Pretrial Motions**

    1. <u>Other Occupants</u>

Prior to trial, the Government moved to bar evidence relating to the arrests, charging decisions, and subsequent case histories of the four women arrested with White. At the time of White's arrest, law enforcement officials recovered three firearms—one allegedly from White's pocket, and two from a purse belonging to one of the other occupants of the vehicle, Shatisha Jennings. All five individuals were arrested and charged on the same day in state court with possession <u>of all three</u> firearms. The State District Attorney's Office later dismissed all charges against three women and White (who had been charged federally). As of December 1, 2009, just Jennings, the owner of the purse, remained charged by the state. She was charged with possession only of the two firearms recovered from her purse.

Moving to exclude the evidence, the Government argued that the case histories of the four women were irrelevant since there is a presumption under New York law that any passenger in a vehicle is "in possession" of any weapon found there. It argued, therefore, that admitting evidence about the arrests and pending charges would raise confusing and complex issues, including an explanation of constructive possession under New York law. The Government also contended that the evidence would invite speculation by the jury about the status of the other individuals' cases. Defense counsel, in response, pressed the relevance of the evidence, asserting that the arrests and charging decisions increased the likelihood that the firearm allegedly found on White's person was instead possessed by the other occupants or physically in the vehicle generally. The defense also noted that New York Penal Law § 265.15(3) contains an exception to the constructive possession provision that applies to firearms found on the person of one of the occupants of a vehicle. In view of

this exception, defense counsel argued that if the firearm had actually been recovered from White's pocket, charging the other occupants with possession of that same weapon would have been improper under New York law.

The district court granted the Government's motion, concluding that the Government's charging decisions were irrelevant to the question of whether White possessed a firearm. *United States v. White*, No. 08-CR-0682 (NGG), 2009 U.S. Dist. LEXIS 113147, at *5 (E.D.N.Y. Dec. 4, 2009). Further, the court found that even if the charging decisions were relevant or could be considered, "the probative value of such evidence [was] substantially outweighed by the danger of confusing or misleading [the] jury," as it would "invite a trial within a trial on the intricacies of the New York State Penal Code and the cases of other individuals." *Id.* at *5-*6.

Following the district court's ruling, White filed a "Motion for Clarification," seeking to introduce a "Request for Laboratory Examination Report" relating to the charges against Jennings (the purse owning occupant). On the report, in a box labeled "Briefly Describe Case," the following was stated: "AT T/P/O DEFT WAS FOUND TO BE IN POSSESSION OF 3 LOADED FIREARMS." Defense counsel argued that this statement was a "factual observation" by at least one of the officers that Jennings physically possessed all three firearms recovered from the minivan, including the firearm allegedly recovered from White's pocket.

In opposition, the Government presented a document with respect to White, which contained the identical language: "AT T/P/O DEFT WAS FOUND TO BE IN POSSESSION OF 3 LOADED FIREARMS." The Government also presented printouts of "Complaint Report" forms for all five individuals arrested on August 6, 2008. The form for

each of these individuals stated in a text box labeled "Details" that "AT T/P/O DEFT WAS FOUND IN POSSESSION OF THREE LOADED FIREARMS."[1]

The court held that the similarity in the phrasing on all the forms indicated that the statements were charging decisions as opposed to factual observations by the officers, and noted that "[i]n this context, possession [was] a legal term of art rather than a factual observation." App. 23.[2] On that basis, the court denied White's motion. App. 23.

### 2. Impeachment Evidence

The Government also moved to preclude cross-examination of a Government witness, Detective Paul Herrmann, regarding testimony Herrmann had given before District Judge Frederick Block in an unrelated case, *United States v. Goines*, 604 F. Supp. 2d 533 (E.D.N.Y. 2009). In *Goines*, a case charging the defendant with illegal possession of a weapon, Herrmann testified at a suppression hearing about a street encounter with the defendant that led to the seizure of a firearm. In granting the defendant's motion to suppress the gun and ammunition seized in that case, Judge Block found that certain aspects of Herrmann's testimony were not worthy of belief.[3] In the present case, the Government, as part of its motion to limit cross-examination, argued that though Judge Block had

---

[1] In this respect, we note that under New York law, it would have been perfectly appropriate to charge White with possession of three loaded firearms even if none were found on his person, so long as they were not found on the person of any other passenger in the minivan.

[2] References to "App." refer to the Appendix submitted by Defendant-Appellant White.

[3] Specifically, Judge Block found that: (1) "If Herrmann had seen Goines flicking what appeared to be a marijuana cigarette to the ground, this, in combination with the foregoing, could well have given rise to reasonable suspicion. However, in light of the conflicting evidence, the Court cannot credit that Herrmann made such an observation"; (2) "Similarly, while it certainly could have added to Herrmann's suspicion if Goines had hurried away without recovering his ID card, the Court cannot credit this aspect of Herrmann's testimony"; (3) "The Court does not credit Herrmann's testimony that Goines broke into a run"; (4) "The Court does not credit that . . . Goines swung at Herrmann's face"; (5) "Further, the Court cannot credit Herrmann's testimony that during the struggle, Goines voluntarily uttered the phrase 'It was just weed'"; (6) "Nor can the Court credit Herrmann's testimony that, after passively resisting for a while, Goines feigned submission, then tumbled over a guardrail with one of Herrmann's fellow officers and began kicking and punching." *Goines*, 604 F. Supp. 2d at 540-44.

discredited some portions of Herrmann's testimony, he had also found some of that testimony credible. Defense counsel, in response, argued that the prior adverse credibility finding was admissible on cross-examination under Federal Rule of Civil Procedure 608(b), which permits inquiry into specific instances of the conduct of a witness that are probative of truthfulness or untruthfulness.

The district court granted the Government's motion, precluding cross-examination by the defense about the *Goines* case. Applying the factors enumerated in *United States v. Cruz*, 894 F.2d 41 (2d Cir. 1990), the court concluded that Judge Block had made no finding of Herrmann's "general veracity" and the case was "entirely unrelated" to White's. *White*, 2009 U.S. Dist. LEXIS 113147, at *9. In addition, because of the "complex nature" of Judge Block's findings, the court noted that it would be difficult to allow the questioning "without delving into the details of the facts and history" of the *Goines* case, or the specific instances in which Judge Block had credited and discredited Detective Herrmann. *Id.* at *10. The court "decline[d] to invite such distraction and confusion of the jury resulting from considerations that [were] far afield from the actual issues in the case." *Id.*

**B. Trial Proceedings**

At trial, the Government introduced testimony from several of the officers who were present during White's arrest. The main Government witness was Herrmann, a junior member of the NYPD Major Case Unit. Herrmann testified that, as part of a joint FBI-NYPD investigation, he and his partners learned that White would be traveling in a maroon minivan near 155th Street and 115th Drive in Jamaica, Queens. Herrmann and Lieutenant Sandro Rizzotti were traveling in an unmarked car driven by Sergeant Frank Guarino. The other members of the team traveled in two unmarked police cars.

After stopping the minivan, Herrmann and Rizzotti walked to the passenger side of the van while Guarino approached the driver, "engaged [her] in conversation," and asked her to get out of the vehicle. App. 59. Herrmann testified that he heard Guarino tell White "in the back [seat] to stop moving around." App. 59. Herrmann "then opened up the sliding door to the passenger side and asked [White] to show [him] his hands and step out of the vehicle." App. 59. Rizzotti similarly testified that it was "[r]ight after" Guarino directed the driver out of the minivan that he said, "[Y]ou stop with your hands," and that it was "[a]t that point," not at some later time, that Herrmann opened the passenger door. App. 129.

Certain portions of Herrmann's testimony were inconsistent. While, on direct examination, Herrmann did not testify that White had been talking on a cell phone before he was frisked, on cross examination, he acknowledged that White had been on a cell phone "briefly." App. 85. Defense counsel also questioned him about whether Guarino had told White to stop talking on the phone. Herrmann initially testified that he did not remember any of this, but after his recollection was refreshed with a previous affidavit, he recalled that White was talking on a cell phone while Guarino was talking to the driver, and that Guarino told White to stop speaking on the phone. Herrmann denied that it was the motion of White putting away the phone that caused him to open the back door of the minivan. Instead, Herrmann testified that he opened the car door after White put away the phone, when Guarino subsequently told White to stop moving. Herrmann admitted, however, that he had stated in a prior sworn affidavit "Sergeant Guarino then told the defendant in sum and substance to stop moving around in the back of the mini van, [and] the defendant stated that he was putting away his cellular phone." App. 88.

8

After White stepped out of the minivan, Herrmann frisked White. Herrmann testified that while frisking White, he felt a firearm in the right front pocket of White's jeans and shouted "hot lunch," code words that White was carrying a firearm. App. 61. Rizzotti testified that when he heard the words "hot lunch," he was standing behind White and handcuffed him. App. 131. Herrmann further stated that after White was handcuffed, he (Herrmann) removed a "Cobra, .380 caliber handgun," "[s]ilver with a black handle," "loaded with seven bullets" from White's pocket. App. 61, 68, 118-19. Rizzotti and Federal Agent Kieran Smith testified that they observed Herrmann take the gun from White's pocket. App. 131, 148-49.

Herrmann, again, faltered in his account of the search, however. He first testified that he also retrieved White's cell phone from White's pocket. When asked if he had taken White's wallet from his back left pocket, he said he could not "recall where [he] got it from." App. 88. He then testified that he was not sure whether White had a wallet and added that the "only thing [he] recovered was the firearm." App. 89. He did not "recall" recovering a cell phone, keys, or a wallet from White. App. 89.

Herrmann further testified that, after recovering the firearm from White's pocket, he went around to the driver's side of the minivan and "observed a gray canvas bag that had a firearm inside of it." App. 70. He searched the bag and "found another firearm." App. 71. On cross-examination, Herrmann acknowledged a prior sworn affidavit stating that Guarino had searched the minivan and told Herrmann that he "found a revolver inside the purse lying on the rear seat." App. 100. Rizzotti testified that two firearms were recovered from the interior of the vehicle, but testified that he had no personal knowledge of how this came about. Smith testified that Guarino noticed a handbag on the driver's side of the rear

9

seat and alerted Smith and Herrmann to the presence of two firearms in the purse, after which Herrmann recovered the guns. In Smith's prior sworn affidavit, he made no mention of the recovery of a second gun, but explained that he might not have been asked what firearms were found at the scene, where they were found, or whether there was a second gun.

During the cross-examination of Herrmann, in response to the testimony that two firearms were found in the purse at the scene, the defense sought to introduce impeachment evidence in the form of a portion of the Government's memorandum of law on an earlier suppression motion. That memorandum stated that "[t]he purse was . . . taken to the precinct, at which time an additional handgun was recovered from inside the purse." App. 288. Defense counsel offered this statement as an admission by a party opponent pursuant to Federal Rule of Evidence 801(d)(2). The Government, in opposition, argued that because the statement was an attorney-drafted summary of the statements of three different officers, it was not admissible, as a prior inconsistent statement, to impeach Herrmann. The Government also noted that if the court admitted the document, the main prosecutor in the case would be required to take the stand to explain his basis for what were his statements. The court said that it did not want to "open the door to that" and ruled that the authority provided by the defense to support introduction of the evidence did not go "to the issue of courts admitting contents of memoranda that are submitted to the court by counsel." Gov't App. 268-69.[4]

---

[4] References to "Gov't App." refer to the Appendix submitted by the Government.

## C. Jury Charge, Deliberations, Verdict, and Sentencing

The trial lasted one day. At the charge conference, the defense objected to the district court's proposed charge, which described the statutory purpose of 18 U.S.C. § 922. The court overruled the objection. White then requested that the district court omit two references to the word "violent" in the proposed language and the court granted the objection. The charge, therefore, read as follows:

> Congress was of the view that the ease with which certain persons were able to acquire firearms was a significant factor in the prevalence of crime in the United States, and that federal control over gun dealers and restriction of the distribution of firearms would be helpful to state and local authorities in meeting this problem. Accordingly, [it] passed a series of laws designed to give support to federal, state[,] and local law enforcement officials in combating crime.
>
> In your role as jurors, you are not to be concerned with the wisdom or the policy of these laws. If in fact a violation has occurred, the law should be enforced. In general, these laws include provisions which prohibit certain categories of people from possessing or receiving firearms which were shipped in interstate commerce[,] and requires any person in the business of dealing in firearms to be licensed.
>
> The government contends that the defendant was within the class of people prohibited from possessing firearms shipped in interstate commerce because he had been convicted of a crime punishable by a term of imprisonment of more than one year.

App. 179-80.

After one day of deliberations, the jury sent a note asking, "What happens if we cannot reach a verdict?" App. 202. The court, in response, refused to give the Government's requested *Allen* charge and instead asked the jury to continue deliberating. The following day, the jury found White guilty of possession of a weapon by a person previously convicted of a felony.

At sentencing, the parties agreed that White faced a fifteen-year statutory minimum sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), and a Guidelines range of 188 to 235 months' imprisonment. After hearing argument from counsel on the 18

11

U.S.C. § 3553(a) factors, the court asked White if he had anything to say prior to sentencing. White made a statement. The court then noted that it had received letters from White's family and acknowledged White's difficult childhood. It reviewed White's criminal record and disciplinary infractions while in state and federal custody. Specifically, the court recounted nine disciplinary infractions in state prison and five charges, including one instance of fighting with another person since White's incarceration at the Metropolitan Detention Center. After the court reiterated the seriousness of a gun crime, it asked White if he was ready to be sentenced. White asked, "Sir, can I explain any of this situations that you was talking about?" App. 234. The court responded, "You'll have your opportunity in the circuit court on appeal. You had your opportunity to speak, sir." App. 234. The court then imposed a sentence of 235 months' incarceration (the top of the Guidelines range), five years of supervised release, on specified conditions, and a $100 special assessment.

## II.    DISCUSSION

We review evidentiary rulings, including a trial court's decision to limit the scope of cross-examination, for abuse of discretion. *See United States v. Figueroa*, 548 F.3d 222, 226 (2d Cir. 2008). "To find such abuse, we must conclude that the trial judge's evidentiary rulings were arbitrary and irrational." *United States v. Paulino*, 445 F.3d 211, 217 (2d Cir. 2006) (internal quotation marks omitted). But a district court also abuses its discretion "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Figueroa*, 548 F.3d at 226 (internal quotation marks omitted). Even if a reviewing court finds error, a new trial is not required if the error was

12

harmless. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). "An erroneous ruling on the admissibility of evidence is harmless if the appellate court can conclude with fair assurance that the evidence did not substantially influence the jury." *United States v. Jackson*, 301 F.3d 59, 65 (2d Cir. 2002) (internal quotation marks omitted), *abrogated on other grounds by Chambers v. United States*, 555 U.S. 122 (2009).

The district court did not consider whether the charging documents or prior credibility findings are inadmissible hearsay, and the parties have not addressed that issue on appeal. We therefore have no occasion to decide hearsay questions, and nothing in this opinion forecloses the district court from considering hearsay objections to this evidence (or any other evidence) at re-trial.

**A. Evidence of the Arrests and Charging Decisions of the Other Occupants**

Following a search of the minivan, all five individuals traveling in the vehicle were arrested and charged with possession of all three firearms recovered—the two firearms found in Jennings' purse and the one allegedly found in White's pocket. The Queens District Attorney subsequently dropped the charges against all defendants except Jennings, who was charged with possession of the two weapons found in her purse. White was charged federally, in the instant case, with possession of the firearm allegedly recovered from his pocket. White argues that the district court erred in excluding evidence regarding the arrests and charging decisions of the other occupants of the vehicle. We agree.

At trial, Appellant sought to admit evidence relating to the arrests, charging decisions, and subsequent case histories of the other occupants of the vehicle to contradict the officers' testimony that one of the firearms was found in White's pocket. White submitted that, if the gun had actually been recovered from his person, none of the other

13

individuals would have been charged with possession of that particular gun. The Government, moving to preclude this evidence, argued that the discovery of the firearms in the minivan permitted the arrests and charging of all passengers present in the vehicle because "[t]he presence in an automobile . . . of any firearm . . . is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon . . . is found." N.Y. Penal Law § 265.15(3) (the "constructive possession provision"). Appellant, in response, pointed out that New York Penal Law § 265.15(3) contains an important and pertinent exception to the constructive possession provision: that the provision does not extend to a weapon found on the person of one of the occupants. *See* N.Y. Penal Law § 265.15(3). White argued, therefore, that even if discovery of firearms in the vehicle permitted the arrests and charging of the other occupants of the vehicle, they could not properly have been charged with possession of <u>all three</u> firearms, and specifically, not the one allegedly found in his pocket. It follows, he contended, that the charges made of the other occupants constituted evidence that no firearm was, in fact, found in his pocket.

The district court ruled against White, holding that "[w]hile a defendant is entitled to cross-examine Government witnesses as to inconsistent statements, the Government's charging decisions are not proper subjects for cross-examination and argument." *White*, 2009 U.S. Dist. LEXIS 113147, at *5 (internal quotation marks omitted). Relying on *United States v. Carneglia,* No. 08-CR-0076 (JBW), 2009 U.S. Dist. LEXIS 8450, at *1 (E.D.N.Y. Jan. 27, 2009) and *United States v. Re,* 401 F.3d 828, 832 (7th Cir. 2005), the court reasoned that "[t]he particular charging choices of government agents may rely upon a variety of considerations, and those decisions regarding one individual do not necessarily speak to the

separate issue of another individual's guilt or innocence." *Id.* We do not agree that such a categorical rule should be applied to the admissibility of charging decisions.

In a criminal case "'[t]he accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged.'" *Holmes v. South Carolina*, 547 U.S. 319, 327 (2006) (quoting 40A Am. Jur. 2d, *Homicide* § 286 (1999)). While such evidence "may be excluded where it does not sufficiently connect the other person to the crime," it cannot be said that evidence of the Government's charging decisions, in <u>all</u> cases, "is speculative or remote, or does not tend to prove or disprove a material fact in issue at . . . trial." *Id.* (quoting 40A Am. Jur. 2d, *Homicide* § 286 (1999)). Such an all or nothing approach undermines the longstanding principle that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks omitted). Indeed, this guarantee would be an empty one if, in view of prosecutorial charging discretion, we barred evidence of charging decisions in all instances with no regard for its reliability or relevance.

Particularly when the evidence is central to the defendant's claim of innocence, we find that categorical exclusion "infringe[s] upon a weighty interest of the accused," *United States v. Scheffer*, 523 U.S. 303, 308 (1998), and threatens "the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing," *United States v. Cronic*, 466 U.S. 648, 656 (1984). We hold, therefore, that the Government's charging decisions may be proper subjects for cross-examination and argument if otherwise admissible. In so holding, we emphasize that we are not creating a *per se* rule of admissibility for charging decisions. We do not in any way intend to tie the hands of district judges

15

evaluating such evidence in the first instance. We simply reject an inflexible approach that evidence of the Government's charging decisions is never admissible by a criminal defendant. District courts may not automatically exclude such evidence without an inquiry into its relevance and probative value. The district court in this case, therefore, committed legal error when it ruled categorically that "the government's charging decisions are not proper subjects for cross-examination and argument." *White*, 2009 U.S. Dist. LEXIS 113147, at *5.

The court also erred by holding, in the alternative, that the evidence was "not relevant to the question of whether [Appellant] White possessed a firearm," and might confuse or mislead the jury. *Id.* at *5-*6. Evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence," Fed. R. Evid. 401,[5] and, unless an exception applies, all "[r]elevant evidence is admissible," Fed. R. Evid. 402. Under this "very low standard," *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008), evidence that the other occupants of the vehicle were charged with possession of the firearm allegedly found in White's pocket was plainly relevant to the question of possession.

These charging decisions might very well cause a jury to doubt the officers' testimony that they recovered the firearm at issue from White's person. White was charged with being a felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). To establish a violation of 18 U.S.C. § 922(g)(1), the Government must prove: (1) that the defendant was previously convicted of a felony, (2) that the defendant knowingly possessed

---

[5] Since White's trial, the Federal Rules of Evidence have been amended. The Advisory Committee Notes indicate that "[t]hese changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility." Fed. R. Evid. 401 advisory committee's note. *See also* Fed. R. Evid. 402 advisory committee's note (same); Fed. R. Evid. 403 advisory committee's note (same); Fed. R. Evid. 608 advisory committee's note (same). "Our analysis would thus be identical under either version of the Rule[s]." *United States v. Scott*, 677 F.3d 72, 77 n.4 (2d Cir. 2012)

a firearm, and (3) that the defendant possessed the firearm in or affecting interstate commerce. *See* 18 U.S.C. § 922(g)(1). The only significant issue at trial was whether White possessed a firearm, and, more specifically, whether the jury would believe the officers' claim that one was recovered from his front pocket. As White argued below, under New York law, "[t]he presence in an automobile . . . of any firearm . . . is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon . . . is found, *except* . . . if such weapon . . . is found upon the person of one of the occupants therein." N.Y. Penal Law § 265.15(3) (emphasis added). In light of this provision, the Government's decision to charge <u>all</u> passengers traveling in the vehicle with possession of <u>all</u> firearms recovered on that day supports White's theory that none of the firearms was found on his person and discredits the officers' testimony to the contrary.

The fact that White's theory requires a "chain of complex reasoning," *White*, 2009 U.S. Dist. LEXIS 113147, at *6, does not mean that it is not relevant. For, as we have expressly stated: "[t]he length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved . . . does not render the evidence irrelevant." *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) (Friendly, *J.*). We find, therefore, that evidence of the Government's charging decisions was relevant to the issue of possession at trial; the decisions were probative of White's innocence and were central to his defense.

Assuming evidence is relevant, it may still be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In conducting this analysis, the district court also erred. First, and crucial to its Rule 403 error, is the district court's initial

categorical determination that it could not admit evidence of the Government's charging decisions. While the district court concluded, in the alternative, that "the probative value of such evidence" was "substantially outweighed by the danger of confusing or misleading the jury," *White*, 2009 U.S. Dist. LEXIS 113147, at *5-*6, its prior finding that charging decisions are not proper subjects for cross-examination obviated the need for such balancing and cast doubt as to the balancing made. In other words, the Rule 403 inquiry was tainted by the court's prior *per se* ruling regarding charging decisions. Moreover, by concluding that the evidence was not relevant at all, the court effectively assigned it little or no probative value, thereby shifting the Rule 403 balancing test considerably in the Government's favor.

In its initial ruling, the court already determined that it would exclude the evidence. But Rule 403 favors admissibility: evidence is only excluded when its probative value is *substantially outweighed* by the prejudice of jury confusion. The probative value of the Government's charging decisions here is high—White's defense centered on discrediting the officers' testimony that a firearm was found in his pocket and evidence of the Government's charging decisions was crucial to proving that theory. Under the circumstances, we conclude that any potential for jury confusion does not substantially outweigh the probative value of the evidence.[6]

For these reasons, the district court's exclusion of the Government's charging decisions constituted manifest error.

---

[6] The dissenting opinion objects to our doing the 403 balancing ourselves and suggests that more facts may come in that would lead a district court to balance with a different result. Should the Government retry White and should more data come in on the various factors as to which we found error, we wish to make clear that there is nothing in the majority opinion that precludes the trial court from making that balance anew on the basis of the facts then before that court.

## B. Cross Examination of Herrmann Regarding *Goines* Case

Pursuant to Federal Rule of Evidence 608(b):

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> (1) the witness

Fed. R. Evid. 608(b)(1). In applying this rule, "[w]hile a district court may impose 'reasonable limits' on cross-examination to protect against, e.g., harassment, prejudice, confusion, and waste, it must also give wide latitude to a defendant in a criminal case to cross-examine government witnesses." *Cedeño*, 644 F.3d at 82 (internal citation omitted). "A trial judge abuses his discretion in curtailing cross-examination of a government witness when the curtailment denies the jury sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government." *United States v. Blanco*, 861 F.2d 773, 781 (2d Cir. 1988) (internal quotation marks omitted).

We have long held that a witness can be cross-examined based on "prior occasions when his testimony in other cases had been criticized by [a] court as unworthy of belief." *United States v. Terry*, 702 F.2d 299, 316 (2d Cir. 1983). Pursuant to Rule 608(b), White wanted to cross-examine Herrmann with respect to Judge Block's credibility findings in *Goines*. Defense counsel sought to inquire "whether [Herrmann] previously gave testimony . . . under oath, in another federal gun possession case, and whether the judge in that case refused to credit six different aspects of [that] testimony." App. 257. The Government, in response, argued that the determinations by Judge Block were neither

19

relevant nor sufficiently probative of truthfulness to outweigh the danger of unfair prejudice or confusion of the issues.

Finding for the Government, the district court analyzed two issues discussed in *Cruz*, 894 F.2d at 43. The court determined that since "Judge Block's finding was not a finding on Detective Herrmann's general veracity, and the case [was] entirely unrelated to [White's case]," the *Cruz* factors weighed against admission. *White*, 2009 U.S. Dist. LEXIS 113147, at *9. In addition, noting that Judge Block's decision was "a detailed and complex reconstruction of events, cobbled together from various testimonial accounts of Detective Her[r]mann and the defendant in that case," the court found that "the inconsistencies relied upon in crediting some testimony and not others may have resulted from a combination of passage of time, confusion, [and] lack of first-hand knowledge, rather than merely the veracity of the witness." *Id.* at *9-*10. Finally, the court noted that "[b]ecause of the complex nature of the findings in *Goines,* it would be difficult for the attorneys in this case to provide the jury with a straightforward account of what Judge Block found," and "so decline[d] to invite such distraction and confusion of the jury resulting from considerations that [were] far afield from the actual issues in [White's] case." *Id.* at *10.

In *Cruz*, we concluded that a prior adverse credibility finding by a federal judge was not relevant to the credibility of that same witness in a later proceeding because (a) the judge had not found a general lack of veracity on the part of the witness, and (b) there was no connection between the subject matter of the two cases. 894 F.2d at 43. More recently, in *Cedeño*, which was decided after the district's ruling in the case before us, we noted that "*Cruz* . . . did not purport to set out a rigid two-part test." 644 F.3d at 82. We explained that while "*Cruz* held that consideration of these two factors was sufficient to avoid a finding of

abuse of discretion on the particular facts of that case only[,] it did not hold that consideration of these two factors [was] sufficient to avoid such a finding in all cases." *Id.* Concluding that the district court in *Cedeño* "erred in limiting its analysis to the two factors discussed in *Cruz* without considering other factors affecting the probity and relevancy of a prior court's finding that a witness had lied," *id.* at 83, we articulated seven non-exhaustive factors for courts to consider in determining the probity and relevance of a prior incident in which a court has criticized a witness's testimony as unworthy of belief: (1) "whether the prior judicial finding addressed the witness's veracity in that specific case or generally"; (2) "whether the two sets of testimony involved similar subject matter"; (3) "whether the lie was under oath in a judicial proceeding or was made in a less formal context"; (4) "whether the lie was about a matter that was significant"; (5) "how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness"; (6) "the apparent motive for the lie and whether a similar motive existed in the current proceeding"; and (7) "whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible," *id.* at 82-83.

White argues that the district court, like the lower court in *Cedeño*, erred in considering only the two *Cruz* factors. The Government demurs, arguing that *Cedeño* is entirely inapplicable because it involved a finding that the witness had previously lied: specifically, the Government claims that while Judge Block found certain aspects of Herrmann's testimony not credible, he did not expressly find that Herrmann had lied and hence *Cruz*, and not *Cedeño*, applies. We reject this distinction. A finding that a witness is not credible is not fundamentally different from a finding that the witness lied. It often just reflects a fact finder's desire to use more gentle language. Nothing, moreover, suggests that

*Cedeño* is limited to explicit findings that a witness lied. The instant case, therefore, is controlled by our decision in *Cedeño*.

In *Cedeño*, we noted that *Cruz* did not set out a rigid two-part test. Instead, we articulated a non-exhaustive list of factors that bear on the admissibility of prior credibility findings.[7] It appears that the district court, which did not have the benefit of *Cedeño* at the time of its ruling, made the same mistake that we identified as error in *Cedeño* when it limited its inquiry to the two *Cruz* factors. Following *Cruz*, the district court concluded that "Judge Block's finding was not a finding on Detective Herrmann's general veracity, and the case is entirely unrelated to this one." *White*, 2009 U.S. Dist. LEXIS 113147, at *9; *see also id.* at *8-*9 ("Courts in the circuit have interpreted *Cruz* to mean that, in determining whether to admit a prior credibility determination, a district court has discretion to consider whether or not the finding in question is a general conclusion about the witness's veracity and whether or not there is a connection between the subject matter of the witness's testimony in the two cases.") (internal quotation marks omitted).

Significantly, the additional factors we identified in *Cedeño* weigh strongly in favor of admissibility here. First, Herrmann's testimony was made under oath in a judicial proceeding. Second, his testimony plainly involved an important matter: at issue in *Goines* was whether a firearm and ammunition seized by law enforcement officials should be suppressed. Third, the suppression hearing in *Goines* took place on February 26, 2009, just months before White's trial on December 14, 2009. Fourth, in attempting to secure a conviction, the motive for Herrmann's discredited testimony in *Goines* is identical to his

---

[7] Following *Cedeño*, we reaffirm the principle that district courts are not constrained by any rigid test when considering the admissibility of prior adverse credibility findings. Though not sufficient in the instant case, we leave open the possibility that in certain cases, consideration of only the two *Cruz* factors might be appropriate and support an evidentiary ruling.

22

purported motive in the instant case. Finally, Herrmann offered no explanation for the previous inconsistencies in his testimony.

Guided by *Cedeño*, we have little trouble concluding that Judge Block's prior credibility finding against Herrmann was relevant and highly probative in this case. The defendant in *Goines*, like White, was charged with possession of a firearm. The district court in that case unequivocally discredited Herrmann's testimony; it concluded that it could not "credit" some of Herrmann's testimony and that portions of Herrmann's testimony "conflict[ed] with his earlier testimony." *Goines*, 604 F. Supp. 2d at 541. The district court even suggested that Herrmann himself had recanted certain aspects of his testimony. *See id.* at 542 ("The Court does not credit Herrmann's testimony that Goines broke into a run; this testimony is contradicted not only by Goines's testimony at the evidentiary hearing, but also by Herrmann's own testimony at the parole hearing and his eventual acknowledgment at the evidentiary hearing that Goines did not have time to run away before he was tackled.") (internal citation omitted). Further, the court implied that Herrmann had lied in a state-court criminal complaint with respect to the same incident. *See id.* at 543 ("The Court does not credit that Goines 'punch[ed]' Herrmann, as Herrmann stated in the state-court criminal complaint, or that Goines swung at Herrmann's face, as Herrmann testified at the evidentiary hearing.") (internal quotation marks and brackets omitted). These credibility judgments are plainly probative of Herrmann's veracity and could affect a jury's determination as to his willingness to lie to secure a criminal conviction. Moreover, they are particularly relevant in the case before us where the crux of the defense was that Herrmann lied about finding a weapon in White's pocket instead of elsewhere in the vehicle.

We find the district court's conclusion to the contrary erroneous. The district court noted that while Judge Block discredited certain aspects of Herrmann's testimony, he relied on other portions. In that vein, the court opined that the inconsistencies in Herrmann's testimony could have been because of passage of time, confusion, or lack of first-hand knowledge. We agree with White that this reading of *Goines* is "insupportable." Pet'rs Br. 28. Judge Block did not attribute any such innocent explanation to Herrmann's discredited testimony. He instead repeatedly emphasized that he could not credit the testimony, portions of which Herrmann himself was forced to disavow on cross-examination. In choosing to excuse Herrmann's discredited testimony by ascribing blameless reasons and explanations to it, without even a hint from the *Goines* court in support of such explanations, the district court clearly erred.

Moreover, the district court's fear that admitting the evidence would confuse the jury because it would require the attorneys to delve into the facts and history of the *Goines* case is misplaced. The district court retained the authority to "impose 'reasonable limits' on cross-examination to protect against, e.g., harassment, prejudice, confusion, and waste." *Cedeño*, 644 F.3d at 82 (quoting *Van Arsdall*, 475 U.S. at 679). Furthermore, and dispositively, the defense simply sought to inquire "whether [Herrmann] previously gave testimony . . . under oath, in another federal gun possession case, and whether the judge in that case refused to credit six different aspects of [that] testimony." App. 257. It did not seek to delve into the facts of the *Goines* case or inquire about the specific instances when Herrmann's testimony was discredited. The Government could have asked the opposite: whether the *Goines* court also relied on some aspects of Herrmann's testimony. This line of questioning would have given White the "wide latitude" that should be afforded to criminal defendants when cross-

examining a Government witness, *Cedeño*, 644 F.3d at 82 (internal quotation marks omitted), while allaying the district court's fear that the evidence would "invite . . . distraction and confusion of the jury," *White*, 2009 U.S. Dist. LEXIS 113147, at *10.

To the extent the district court's consideration of jury confusion was targeted at the Rule 403 analysis, we also disagree that any such jury confusion would substantially outweigh the probative value of Judge Block's adverse credibility finding. The district court characterized the prior credibility finding as "far afield from the actual issues in the case." *White*, 2009 U.S. Dist. LEXIS 113147, at *10. We disagree; for the reasons discussed above, Herrmann's prior testimony was both probative and relevant in the instant case. In starting out by deeming the evidence insufficiently probative of the witness's credibility to be admitted, the court below effectively made a true Rule 403 balancing impossible.[8]

We conclude that the district court's decision to exclude the prior adverse credibility finding with respect to officer Herrmann cannot be located within the range of permissible decisions.

## C. Harmless Error

Even manifest errors in the admission of evidence do not justify the reversal of a conviction if, in light of all the circumstances, the errors are harmless. The district court's errors in this case, however, were far from harmless. The excluded evidence spoke directly to a critical element of the Government's case and its exclusion prevented White from presenting a complete defense. *See Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir. 2000) (noting that in assessing harmlessness it is important to consider whether the error "bore 'on an issue that [was] plainly critical to the jury's decision'" (quoting *Hynes v. Coughlin*, 79 F.3d

---

[8] *See supra* note 6.

285, 291 (2d Cir. 1996))). The sole disputed issue at trial was whether White possessed a firearm: The Government's case centered on the officers' claim that one was recovered from White's front pocket and White set out to show that none of the firearms seized on that day were found on his person. White's success at trial, therefore, hinged on his ability to undermine the testimony of the law enforcement officers. Evidence that the Government charged the other occupants of the vehicle with possession of the firearm that it claimed was found on White's person tended to do just that. In addition, evidence that Herrmann's testimony under oath in a similar criminal proceeding was discredited by a district judge casts doubt on his testimony on that very issue in the instant case. Herrmann's testimony in this case, moreover, was inconsistent on some matters: he wavered on whether White had been talking on a cell phone before he was frisked, he could not recall whether he retrieved White's cell phone during the frisk or whether he recovered a wallet or keys from White's pocket, and his testimony at trial regarding recovery of the other firearms conflicted with a prior sworn affidavit. Admission of the adverse credibility finding in *Goines*, therefore, might well have further undermined Herrmann's testimony in the eyes of the jury.

We do not discount the strength of the Government's case. The Government notes that in addition to Herrmann's testimony, it presented the testimony of two other officers whose accounts of the stop and frisk were consistent with Herrmann's in all material respects. Herrmann testified that he personally recovered a "Cobra, .380 caliber handgun," "[s]ilver with a black handle," from White's "right front pants pocket." App. 61, 118-19. Rizzotti similarly testified that he observed Herrmann recover a "silver automatic with a black handle" from White's "front right pocket," App. 131, and Smith, who was standing approximately three feet away from White at the time, observed Herrmann remove a "silver

26

pistol" from White's "right front waist area," App. 148-49. This, however, does not render the district court's errors harmless. It is certainly possible that the jury, if presented with reasons to doubt Herrmann's testimony, might similarly have questioned the testimony of the other officers. This is especially so, moreover, since these officers also provided testimony at trial that was somewhat inconsistent with prior sworn affidavits. Additionally, admission of the Government's charging decisions on the day of the stop, which could be read by a jury as conflicting with the account of the stop by all the officers, might have given the jury further reason to pause.

In sum, in a classic case of competing stories, the jury was not presented with a comprehensive picture. On the record before us, we cannot conclude "with fair assurance" that district court's erroneous exclusion of the two pieces of evidence at issue "did not substantially influence the jury." *Jackson*, 301 F.3d at 65. Accordingly, we find that the district court's errors were reversible.

**D. Remaining Arguments**

White also argues that the district court (1) erred in excluding a "Request for Laboratory Examination Report," (2) erred in precluding the admission of a legal memorandum submitted by the Government to impeach a Government witnesses, (3) erred in giving the jury a charge on the statutory purpose of 18 U.S.C. § 922(g), and (4) committed sentencing error by not allowing him to respond to certain statements prior to the imposition of sentence. In light of our findings above, we decline to consider the merits of these arguments.

### III. CONCLUSION

For the foregoing reasons, the judgment of conviction of the district court is VACATED and the case is REMANDED for a new trial.

DENNIS JACOBS, *Chief Judge*, dissenting:

I respectfully dissent.  While I am inclined to agree that the admissibility of charging decisions may not be suitable for a rule of categorical exclusion and that the admissibility of adverse credibility findings in prior cases has been the subject of new law, I conclude:

A.  With respect to the charging decisions, I would affirm on the district court's alternative ruling that the probative value of such evidence in this case was substantially outweighed by the danger of confusing or misleading the jury; and in that way, I would avoid the vexed question that the majority opinion embraces.

B.  As to the testimony of Detective Herrmann in a prior case, I agree with the majority opinion that the district court's analysis should have considered the seven factors in *Cedeño*.  But I would remand for the district judge to make that ruling in the first instance and in the ordinary course, subject to the usual appellate review for abuse of discretion.

Moreover, as the majority opinion observes, hearsay problems abound in this case; yet, since neither party raised these issues on appeal, the Court has not decided whether the charging documents or the prior credibility

findings are admissible hearsay.  The majority's explicit recognition of that circumstance affords the district court a needed latitude on appeal, and prevents the opinion from being misread or overread.

**A.**

The majority opinion holds that there should be no categorical exclusion of charging documents from evidence. Maybe; but, in any event, this holding does little harm because trial judges would virtually always exclude such evidence for multiple and sound reasons.  In my view, Judge Garaufis did not abuse his discretion in excluding the charging documents in this case.

In a nutshell, there were five people in one car with three guns.  Under New York law, all five were in constructive possession of all three guns except for any gun "found upon the person."  *See* N.Y. Penal Law § 265.15(3)(a). A New York charging document charged all occupants with possession of all three guns.  The state charge against White was dismissed, and White was charged in federal court with possessing one gun (on his person).  He was convicted of that charge.  White wanted to argue that if the gun had

2

been on his person, the drafter of the state charging document would not have charged the other occupants with possessing it--assuming of course that the drafter understood that nuance of New York law.

The majority finds error in the district court's apparent ruling that charging documents are categorically excluded from evidence. However, the district court prudently went on to find, in the alternative, that the "probative value" of the charging document would be "substantially outweighed by the danger of confusing or misleading [the] jury." *White*, 2009 U.S. Dist. Lexis 113147, at *6. That seems to me an unexceptionable observation.

The majority rejects that finding on the extraordinary ground that the district court's "prior finding that charging decisions are not proper subjects for cross-examination obviated the need for such balancing and cast doubt as to the balancing made. In other words, the Rule 403 inquiry was tainted . . . ." Op. at 17. I cannot agree that an alternative ground for an evidentiary ruling must be disregarded as "tainted" by a legal error (if there is one) in another cited ground for the ruling.

3

The majority goes on to do the balancing itself, and does a bad job of it, for several reasons.

First, the majority does not explain why we should not remand to the district court (by vacatur or under our *Jacobson* procedure) for it to do the balancing, now that we are all enlightened as to the law. *See generally United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994).

Second, in this case, the danger of confusing or misleading the jury is great: the underlying principles of New York law are complex; "possession" of a firearm is (as the district judge pointed out) "a legal term of art rather than a factual observation," App. 23; the charging documents are steeped in hearsay; and explication would likely require testimony by state and federal prosecutors.

Third, the Rule 403 inquiry involves facts not before this Court. "The length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved necessarily lessens the probative value of the evidence, and may therefore render it more susceptible to exclusion as unduly confusing, prejudicial, or time-consuming . . . ." *Ravich*, 421 F.2d at 1204 n.10. The majority takes no account of the "length of the chain" connecting [i] the

4

charges filed against the four women with [ii] the police officers' observations.  Were the charging decisions recommended by the police who made the direct observations?  If not, what was the communication between the arresting officers and the individual who made the decisions?  At a minimum, the question of admissibility should be remanded to the district court so that it can inquire into these issues, and any others that may bear on the balancing.

Fourth, the seeming breadth of the majority opinion may be expected to do harms in other cases.  When there are several charging documents, and several defendants, the jury will be dealing with a variorum edition of the indictment.  Charging documents may not have been drafted with the expectation that they would be final or authoritative.  And drafts of charging documents may become the subject of motions under *Brady v. Maryland*, 373 U.S. 83 (1963)*, Giglio v. United States*, 405 U.S. 150 (1972), or 18 U.S.C. § 3500.  This is a can of worms.

**B.**

The second issue decided by the majority opinion concerns the relevance and probative value of findings in a

5

prior unrelated case, in which the trial judge declined to credit certain testimony by a police officer.  White wanted to use the earlier findings to cross-examine the police witness against him.  The issue framed by the majority is whether this was "[e]vidence that might lead a jury to conclude that the officer was willing to lie in a similar case in order to secure a criminal conviction."  Op. at 3. The district judge relied on then-current precedent to rule that such evidence must be excluded because the prior finding "was not a finding on [the officer's] general veracity, and the [prior] case is entirely unrelated to this one."  *White*, 2009 U.S. Dist. Lexis 113147, at *9.  As the majority opinion explains, those considerations became two of seven (non-exhaustive) considerations listed in the later-decided case of *Cedeño*.

So it would seem obvious that if this evidentiary ruling makes a difference, the proper disposition is to remand (either by vacatur or under our *Jacobson* procedure), for the district court to apply the seven-plus factors of *Cedeño*.

As *Cedeño* makes clear, whether a witness "was willing to lie in a similar case" is a finding with several

6

component fact issues.  Was the case similar?  I am inclined to think so, and I would so decide if I were the district judge (which I am not).  Was there a general finding as to veracity in the prior case?  As the district court found, there was not.  Were the statements that were not credited made as willing lies?  That is a question that should be confided to the district court, which can supplement the transcript of the prior case with live testimony from the police officer.  The district court found that the judge in *Goines* credited parts of the officer's testimony and discredited other parts, and that the discredited parts could have been deficient by reason of "a combination of passage of time, confusion, [and] lack of first-hand knowledge."  *White*, 2009 U.S. Dist. Lexis 113147, at \*9-10; *see also Zaman v. Mukasey*, 514 F.3d 233, 237 (2d Cir. 2008) (per curiam) (emphasizing that a factfinder may "note[] problems with parts of [a party's] story that go to the [party's] credibility" without "mak[ing] the ultimate conclusion that the entirety of the testimony suffers from a lack of credibility").  On remand, the district judge could amplify those findings in light of *Cedeño*, review the *Goines* transcripts in order to make a more fine-grained set of

7

findings, and elicit from the police officer an explanation for the inconsistencies noted by the *Goines* court that (as the majority opinion emphasizes) is absent from the record.

Instead, the majority (again) conducts its own evidentiary analysis, making findings as to the *Cedeño* factors and concluding that they "weigh strongly in favor of admissibility." Op. at 22. The majority suggests that "should more data come in on the various factors," the trial court is free to conduct the evidentiary balancing "anew." Op. at 24 n.6. But it is the trial court--in the first instance--that should make findings on the *Cedeño* factors and conduct the evidentiary balancing. This Court's role is to review the balancing, not to conduct it.[1]

---

[1] In performing the trial court's role, the majority discounts "the district court's fear that admitting the evidence would confuse the jury." Op. at 23. The majority opinion posits that the defense "simply sought" to ask a single question on cross-examination, Op. at 24: "whether [the officer] previously gave testimony . . . under oath, in another federal gun possession case, and whether the judge in that case refused to credit six different aspects of his testimony." App. 257. But the question becomes a lot less simple when one considers that the prosecution would then get to conduct redirect, and it might in fairness be afforded the opportunity to set out the facts of *Goines* and elicit explanations from the police witness. *See United States v. Diaz*, 176 F.3d 52, 80 (2d Cir. 1999) ("The scope of redirect examination is a matter entrusted to a trial judge's broad discretion.").

8

In short, now that we have clarified the law (as the majority opinion undertakes to do), I would remand for the district court to apply it.