*United States v. Jones*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of April, two thousand twenty-six.

PRESENT:

> ROBERT D. SACK,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> > *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                          No. 24-2225

GENARO CASTRO,

> *Defendant*,

WILLIAM JONES,

                    *Defendant-Appellant.*

_____

| | |
|---|---|
| **For Defendant-Appellant:** | BRENDAN WHITE, New York, NY. |
| **For Appellee:** | EMILY A. JOHNSON (Justin V. Rodriguez, Christy Slavik, James Ligtenberg, *on the brief*), *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Edgardo Ramos, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the August 14, 2024 judgment of the district court is **AFFIRMED**.

William Jones appeals his conviction following a jury trial at which he was found guilty of (i) racketeering conspiracy in violation of 18 U.S.C. § 1962(d); (ii) murder in aid of racketeering in violation of § 1959(a)(1); and (iii) murder through use of a firearm in violation of § 924(j). On appeal, Jones contends that (i) the government did not present the jury with sufficient evidence to convict him on the racketeering and murder counts, and (ii) the district court improperly excluded impeachment evidence that would have undermined the credibility of

the government's cooperating witness. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I. Sufficient Evidence Supported the Jury Verdict.

We review *de novo* a defendant's challenge to the sufficiency of the evidence. *United States v. Gershman*, 31 F.4th 80, 95 (2d Cir. 2022). A defendant "faces an uphill battle . . . and bears a heavy burden . . . because a reviewing court must sustain the jury's verdict if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Kelly*, 128 F.4th 387, 408 (2d Cir. 2025) (citations and internal quotation marks omitted); *see United States v. Cuti*, 720 F.3d 453, 461–62 (2d Cir. 2013) ("To avoid usurping the role of the jury," we "must also credit every inference that the jury might have drawn in favor of the government . . . , because the task of choosing among competing, permissible inferences is for the jury, not for the reviewing court." (alterations adopted and citations and internal quotation marks omitted)).

Jones makes two sufficiency-of-the-evidence arguments on appeal. He first contends that the government presented the jury with insufficient evidence to establish the existence of a Racketeer Influenced and Corrupt Organizations Act

3

("RICO") enterprise. He likewise argues that there was insufficient evidence from which the jury could conclude that he shot Frederick Delacruz. We address each in turn.

### A. Evidence That Jones Was a Member of a RICO Enterprise

To sustain a conviction for either racketeering conspiracy or murder in aid of racketeering, the government must present the jury with sufficient evidence to find, beyond a reasonable doubt, that, *inter alia*, the defendant was (or in the case of the conspiracy count, agreed to become) a member of a RICO enterprise. *See United States v. Capers*, 20 F.4th 105, 117–18 (2d Cir. 2021) (for racketeering conspiracy); *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011) (for murder in aid of racketeering). An "enterprise" includes any association in fact of individuals united by "(1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit the associates to pursue the enterprise's purpose." *Kelly*, 128 F.4th at 408 (internal quotation marks omitted).

Here, the government overwhelmingly demonstrated that the Trinitarios gang qualified as a RICO enterprise, and that Jones was a member. *First*, the Trinitarios clearly possessed the "common purpose" of engaging in drug and gun trafficking. *See Boyle v. United States*, 556 U.S. 938, 941, 951 (2009) (finding

4

"common purpose" where defendant participated in group that committed series of crimes). *Second*, the gang was also strictly hierarchical, with chapter-level leaders who enforced discipline within their chapters and represented their chapters at "universal meetings" of the larger organization. App'x at 103. *Third*, the Trinitarios also had sufficient longevity to pursue the gang's purposes, with the evidence showing that the organization carried out crimes in New York from as early as 2016 through as late as the 2019 murder of Delacruz. *See Boyle*, 556 U.S. at 941, 946 (finding longevity met where "core group was responsible for" a string of crimes over three years because "the enterprise had affairs of sufficient duration to permit an associate to participate in [its] affairs through a pattern of racketeering activity" (internal quotation marks omitted)). *Finally*, Jones was not only a member, but a leader of the gang, representing his local chapter at a meeting at which he voted to "shoot," "stab," "kill," and "do whatever needed to be done" in response to conflicts with rivals. App'x at 107. This evidence clearly sufficed for the jury to find that Jones was a member of a RICO enterprise.

### B. Evidence That Jones Shot Delacruz

Committing or aiding and abetting murder is, of course, an element of both murder in aid of racketeering and murder through the use of a firearm. *See Persico*, 645 F.3d at 105 (for murder in aid of racketeering); *United States v. Wallace*, 447 F.3d

184, 187 (2d Cir. 2006) (for murder through use of a firearm).  On appeal, Jones argues that the government failed to prove murder beyond a reasonable doubt because "[t]here was copious evidence that [Albert] Castillo" – a Trinitarios member and government witness – also "had motive and opportunity to kill Delacruz."  Def. Br. at 32.

But the government offered ample evidence from which the jury could conclude that Jones committed or aided and abetted the murder of Delacruz.  Indeed, eyewitnesses testified that they were present when Jones shot Delacruz, and others heard Jones brag about the murder afterward.  Such testimony alone satisfied this element.  That some evidence might have showed that Castillo also had motive and opportunity to kill Delacruz is of no moment since we must "credit every inference that the jury might have drawn in favor of the government," including that Castillo was telling the truth when he testified that Jones killed Delacruz.  *Cuti*, 720 F.3d at 62 (alteration adopted and internal quotation marks omitted).

## II.  The District Court Did Not Abuse Its Discretion in Excluding Extrinsic Evidence Concerning Castillo's Cooperation.

Jones next argues that the district court improperly prevented him from introducing extrinsic evidence to impeach Castillo.  Again, we disagree.

6

We review evidentiary rulings for abuse of discretion, which we will find only where the ruling was "arbitrary and irrational." *United States v. White*, 692 F.3d 235, 244 (2d Cir. 2012), *as amended* (Sept. 28, 2012) (internal quotation marks omitted). In assessing "the relevancy and unfair prejudice of proffered evidence," we give the district court "great deference" because "it sees the witnesses, the parties, the jurors, and the attorneys, and is thus in a superior position to evaluate the likely impact of the evidence." *Kelly*, 128 F.4th at 424 (internal quotation marks omitted). And we will affirm even a "manifestly erroneous" evidentiary ruling "if the error was harmless," *id.*, which happens when we "can conclude with fair assurance that the evidence did not substantially influence the jury," *United States v. Siddiqui*, 699 F.3d 690 703 (2d Cir. 2012), *as amended* (Nov. 15, 2012).

A proponent may offer "extrinsic evidence of a witness's prior inconsistent statement . . . after the witness is given an opportunity to explain or deny the statement." Fed. R. Evid. 613(b). The proponent, however, may impeach the witness with "extrinsic proof of a prior inconsistent statement only as to . . . those matters which are relevant to the issues in the case." *United States v. Blackwood*, 456 F.2d 526, 531 (2d Cir. 1972). And even if the extrinsic inconsistent statement is relevant, a district court may nevertheless exclude it "if its probative value is

substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As to those determinations, we generally defer to the district court's weighing of probative value and prejudice. *See United States v. Coppola*, 671 F.3d 220, 245 (2d Cir. 2012) (maximizing evidence's probative value and minimizing its prejudicial effect in reviewing decision to admit).

At trial, the government called Castillo to testify about the organization of the Trinitarios and Jones's role in the murder of Delacruz. During cross-examination, Jones's counsel asked Castillo whether he had told the government, before trial preparation, that he had been involved in planning to kill Delacruz. Dist. Ct. Doc. No. 83 at 416. Castillo answered that he had been truthful with the government "[f]rom the moment that [he] started speaking with the[m]." *Id.* Jones's counsel then asked Castillo to explain or deny whether he had told the government, before trial preparation, about his role in planning the murder, and Castillo answered that he could not have known that Jones would actually kill Delacruz because he had never seen anyone in the Trinitarios kill anyone until Jones killed Delacruz. *Id.* at 417.

8

After Castillo's cross-examination, Jones attempted to call a detective to testify that, during his first proffer with the government, Castillo did not mention a conversation he had with Jones in Yonkers during which they discussed locations where Jones might kill Delacruz. Jones argued that this omission was inconsistent with Castillo's earlier testimony about being truthful "from the moment" he started proffering, and thus undermined his credibility. The district court precluded the detective's testimony, concluding that Castillo's omission was not inconsistent with his prior testimony and that, in any event, the introduction of extrinsic evidence concerning possible omissions during the initial proffer was likely to confuse the jury and waste time.

We cannot say that the district court abused its discretion in precluding the detective's testimony. For starters, the district court's finding that there was no inconsistency between Castillo's direct testimony and his omission was neither "arbitrary" nor "irrational," *White*, 692 F.3d at 244 (internal quotation marks omitted), since the failure to mention every detail in an initial proffer is not the same as making false or misleading statements. But even if it could be argued that Castillo's omission of the Yonkers conversation from his first proffer had a bearing on Castillo's credibility, the district court's desire to avoid a mini-trial on that issue

9

was by no means irrational.  Given the "great deference" that we owe to the trial judge's "superior position" in assessing the probative value and prejudice associated with such testimony, we find no error in the district court's decision to exclude the detective's testimony.  *Kelly*, 128 F.4th at 424.  And even if the district court had erred manifestly, the error would still have been harmless because the government presented overwhelming evidence that Jones killed Delacruz.  *See United States v. Okatan*, 728 F.3d 111, 121 (2d Cir. 2013) ("The strength of the prosecution's case is probably the single most critical factor in determining whether error was harmless."  (internal quotation marks omitted)).

*   *   *

We have considered Jones's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the district court's conviction.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10